JOSEPH KITTINGER, Appellant, *v.* THE BUFFALO TRACTION
  COMPANY, Respondent, Impleaded with THE CITY OF BUF-
  FALO and EDGAR B. JEWETT, as Mayor of the City of
  Buffalo.

STREET SURFACE RAILROAD — TAXPAYER'S ACTION TO HAVE CONSENT
OF LOCAL AUTHORITIES DECLARED VOID — CONSTITUTIONALITY OF CH. 649,
L. 1896.  On demurrer to the complaint of a taxpayer, seeking to have
a consent granted by the local authorities of the city of Buffalo to the
construction of a street surface railroad declared illegal and void, and to
restrain the building of the road, *held*, that the complaint does not state
facts sufficient to constitute a cause of action either under section 1925 of
the Code of Civil Procedure or under the Taxpayers' Act, as an action to
prevent waste of or injury to the property of the city, or as an action to
restrain the consent on the ground that it was based upon and procured
by fraud and corruption on the part of the municipal authorities, or as an
action to restrain an illegal act; and, also, that the complaint does not
disclose grounds for declaring unconstitutional the act (L. 1896, ch. 649) to
validate and confirm certain consents given by the local authorities of
cities of the first and second class to the construction of street surface
railroads.

  *Kittinger* v. *Buffalo Traction Co.*, 25 App. Div. 329, affirmed.

  (Argued June 5, 1899; decided October 10, 1899.)

APPEAL, by permission, from an order of the Appellate
Division of the Supreme Court in the fourth judicial depart-
ment, entered February 15, 1898, reversing an interlocutory
judgment overruling a demurrer to the complaint entered
upon a decision of the court at an Equity Term, and sustain-
ing the demurrer.

  This action was brought by a taxpayer to procure a judg-
ment declaring that the consent obtained by the defendant,
The Buffalo Traction Company, from the authorities of the
city of Buffalo for the construction and maintenance of a
street surface railroad is illegal and void, and to enjoin the
building of the road.

  The questions certified for review are as follows :

  *First.* Does the complaint in this action state facts suffi-
cient to constitute a cause of action in favor of the plaintiff

as a taxpayer, either under section 1925 of the Code of Civil Procedure, or under the provisions of the Taxpayers' Act, chapter 531 of the Laws of 1881, as amended?

*Second.* Does the complaint in this action state facts sufficient to constitute a cause of action in favor of the plaintiff as a taxpayer, either under section 1925 of the Code of Civil Procedure, or under the provisions of the Taxpayers' Act, chapter 531 of the Laws of 1881, as amended, as an action to prevent waste of or injury to the estate, funds or other property of the city of Buffalo?

*Third.* Does the complaint in this action state facts sufficient to constitute a cause of action in favor of the plaintiff as a taxpayer, to restrain the proposed consent from the municipal authorities of the city of Buffalo to the defendant, the Buffalo Traction Company, or to declare said consent to be illegal and void, under either of said acts of the legislature, on the ground that the said consent was based upon and procured by fraud and corruption on the part of the said municipal authorities, or some of them?

*Fourth.* Does the complaint in this action state facts sufficient to constitute a cause of action in favor of the plaintiff as a taxpayer, under either of said acts of the legislature, as an action to restrain an illegal official act by the officers of the city of Buffalo, or any of them?

*Fifth.* Whether, under the allegations of the complaint, chapter 649 of the Laws of 1896 is in violation of the Constitution of the state of New York, upon any of the grounds stated in the complaint.

*Ansley Wilcox* and *Frank C. Ferguson* for appellant. The complaint states a cause of action in favor of the plaintiff as a taxpayer, to restrain the proposed consent or grant from the city of Buffalo to the Buffalo Traction Company, and to declare it to be illegal and void, on the ground that it was based upon and procured by fraud and corruption on the part of the municipal authorities, or some of them. (*Ziegler v. Chapin,* 126 N. Y. 342.) The complaint states a cause of

action in favor of the plaintiff as a taxpayer, to restrain the proposed consent or grant from the city of Buffalo to the Buffalo Traction Company, and to declare it to be illegal and void, both on the ground that said consent was an illegal official act, and on the ground that it was a waste of and an injury to the property of the city. (L. 1881, ch. 531; L. 1887, ch. 673; L. 1892, ch. 301; *Peck* v. *Belknap*, 130 N. Y. 398; *Parfitt* v. *Ferguson*, 3 App. Div. 176; *Norris* v. *Wurster*, 23 App. Div. 124; *People* v. *O'Brien*, 111 N. Y. 1; *S. B. R. R. Co.* v. *N. N. Y., etc., Co.*, 16 Misc. Rep. 263; *Mayor, etc.*, v. *Africa*, 77 Fed. Rep. 501; *L. T., etc., Co.* v. *Cincinnati*, 76 Fed. Rep. 296; *Railroad Co.* v. *Delamore*, 114 U. S. 501; *D. C. S. Ry. Co.* v. *Detroit*, 22 U. S. App. 570; *S. A. R. R. Co.* v. *Kerr*, 72 N. Y. 330.) The curative act of the legislature (Chap. 649 of the Laws of 1896) is unconstitutional. (*Matter of Henneberger*, 155 N. Y. 420; L. 1896, ch. 649; Const. N. Y. art. 3, §§ 15–20; art. 12, § 2; *Matter of N. Y. E. R. R. Co.*, 70 N. Y. 327; *Weinmann* v. *P. Ry. Co.*, 118 Penn. St. 192; *S. P. Co.* v. *Mayor, etc.*, 152 N. Y. 257.)

*J. H. Metcalf* for respondent. Plaintiff has no cause of action. (Code Civ. Pro. § 1925.) The consent granted to the defendant by the municipal authorities was not the property of the city within the meaning of the acts of the legislature authorizing a taxpayer's action. (*Adamson* v. *N. E. R. R. Co.*, 89 Hun, 261; *Case* v. *County of Cayuga*, 88 Hun, 59; *People* v. *Kerr*, 27 N. Y. 188; *Story* v. *N. Y. E. R. R. Co.*, 90 N. Y. 122; *D., L. & W. R. R. Co.* v. *City of Buffalo*, 65 Hun, 467; 4 App. Div. 562; 158 N. Y. 266.; *Talcott* v. *City of Buffalo*, 125 N. Y. 280; *Ziegler* v. *Chapin*, 126 N. Y. 342; *Milhau* v. *Sharp*, 15 Barb. 212; *W. W. M. Co.* v. *Shanahan*, 128 N. Y. 345.) The several, separate and distinct allegations and charges of the complaint have been passed upon by this court favorably to the defendant's contention. (*People ex rel.* v. *Barnard*, 110 N. Y. 548; *Talcott* v. *City of Buffalo*, 125 N. Y. 280; *Ziegler* v. *Chapin*, 126 N. Y. 342; *Matter of P. R. R. Co.*, 112

N. Y. 578; *Matter of B. S. R. R. Co.*, 34 Hun, 414; *Matter of A. C. Ry. Co.*, 88 Hun, 603; *Mc Williams* v. *Jewett*, 14 Misc. Rep. 491; Pomeroy on Remedies, § 531; *Knapp* v. *City of Brooklyn*, 97 N. Y. 520; *Sheridan* v. *Jackson*, 72 N. Y. 170; *Butler* v. *Viele*, 44 Barb. 166.)   Chapter 649 of the Laws of 1896 is constitutional. (*Mayor, etc.,* v. *E. A. R. R. Co.*, 118 N. Y. 389; *Kerrigan* v. *Force*, 68 N. Y. 381; *People ex rel.* v. *Rice*, 135 N. Y. 473; *People ex rel.* v. *Draper*, 15 N. Y. 546; *People ex rel.* v. *Bd. Suprs.*, 147 N. Y. 1; *People ex rel.* v. *Zoll*, 97 N. Y. 203.)

Parker, Ch. J.   This defendant was organized in the year 1895 for the purpose of building in the city of Buffalo a street surface railroad exceeding sixty-four miles in length, at which time another corporation had in operation a street surface railroad that occupied nearly eighty miles of streets.   On the 19th day of November, 1895, this defendant made application to the board of railroad commissioners for a certificate under section 59 of the Railroad Law, to the effect that public convenience and necessity required the construction of the railroad as proposed, and that board, a little over two months later, refused to grant the certificate.   A few days before the application made to the railroad commissioners the defendant applied to the common council of the city of Buffalo for leave to construct its railroad in pursuance of section 91 of the Railroad Law, which provides, in effect, that a street surface railroad "shall not be built, extended or operated, unless the consent * * * of the owners," in cities and villages, "of one-half in value of the property bounded on" the street along ".which it is proposed to build or operate such railroad," be obtained in the manner provided by that section, and also the consent of the local authorities having control of such streets. The charter of the city of Buffalo provides that "the legislative power of the city shall be vested in a common council, which shall consist of a board of councilmen and a board of aldermen" (Revised Charter of the city of Buffalo, Laws 1891, chapter 105, title 2, chapter 1, section 4), and that "no action

of the common council shall be of force unless it shall have originated in the board of aldermen and shall have been approved by the board of councilmen; but the board of councilmen may amend any measure transmitted to it and return the same to the board of aldermen for further consideration; if the board of aldermen agree to such amendment, its action as amended shall be the action of the common council; if it shall not agree thereto, and shall further amend, it may return the measure as finally passed by it to the board of councilmen for its further consideration." (Id., section 5.) The section last quoted further provides: "Whenever by law, the giving of notice, reference to any committee or any officer or person, or other act is made a prerequisite to action by the common council, it shall be necessary for such notice to be given, reference to be made or other act to be done, by the board of·aldermen only, unless herein otherwise specifically provided."

On the second day of December, 1895, the board of aldermen, having before it the application which the defendant had filed in the previous month, adopted a resolution to the effect that such application should be first considered by the common council on the twenty-first day of December, 1896, and directed the publication of such resolution in two daily newspapers of the city, to be designated by the mayor. Thereafter such resolution was approved by the board of councilmen, signed by the mayor and published in the manner directed. Down to this point it is conceded that the proceedings were regular. On the twenty-first day of December, in pursuance of the notice given, the board of aldermen met and considered the petitioner's application, and that body thereafter and on the twenty-third day of December, adopted a resolution granting permission to the petitioner to construct and operate its railroad in the various streets of the city, and the same was duly transmitted to the board of councilmen, which body on the day following approved and adopted such resolution without amendment. No argument is required to show that this procedure was in accordance with the provisions of the charter quoted above, for it appears from its mere reading not only

that the practice adopted agrees with its provisions, but that none other would.    Unless then there are other provisions of the charter having special application to the procedure to be adopted where the consent of the common council is requisite in order to obtain a franchise for the use of the streets in the city, this question need not be further considered.

The claim of the appellant is that the board of councilmen and the board of aldermen, which together constituted the common council of the city, should have met in joint session for the purpose of considering the application, and that their failure to do so rendered the entire proceeding invalid.    The provisions of the charter relied upon to sustain this position are sections 33 and 374.    Section 33 provides that " On the first Monday of January, of each year, or as soon thereafter as practicable, the common council shall by joint ballot, in joint session of both boards, a quorum of each board being present, elect a city clerk, who shall be .the clerk of the city and the clerk of the common council."    Section 374 provides among other things that " If a vacancy occurs in any elective office in the city or in any ward, except of that of alderman or councilman, it shall be filled by the Common Council at a joint session of the boards composing the same, by a vivà voce vote.    Such joint session shall be called by the mayor."    These provisions, for the joint session of the two bodies composing the common council, constitute exceptions to the general rule and are applicable to the situations therein described, and to none other. It necessarily follows that the proceedings before the common council were on their face entirely regular, a result reached by the Appellate Division in *Matter of The Buffalo Traction Company* (25 Appellate Division, 447), its order being subsequently affirmed in this court without an opinion.    (155 N. Y. 700.)    After the resolution had passed both bodies of the common council, and, together with the application, was pending before the mayor, he sent a communication to the common council suggesting certain amendments.    The charter contained no authority for this action on the part of

the mayor, which in effect amounted to a request to the common council to withdraw the consent then pending before him for further action on their part, a practice frequently adopted by the executive of this state, and the executive heads of municipal governments. In subsequently approving of the consent, the mayor acted within his legal right, for it is not alleged in the complaint, nor is it claimed, that the mayor returned to the city clerk, with his objections, the resolutions then pending before him for his consideration, as required by section 18, chapter 1, title 2 of the charter, which provides that "Every ordinance and resolution of the common council * * * shall be presented to the mayor before it shall be of force. If he approves it he shall sign it; but if not, he shall return it with his objections, to the city clerk, who shall lay the same before the board of aldermen at its next regular meeting thereafter." The mayor did not return the consent with his objections to the city clerk. What he did do was to make suggestions in a letter to the common council, as he might have done orally to individual members thereof. That act, whether wise or not, did not relieve him from the duty of either signing the resolution or returning it, with his objections, to the city clerk within the time provided by the charter, and he performed his duty by signing the resolution.

The General Railroad Law not only requires the consent of the municipal authorities and the consent of the owners of one-half in value of the property bounded on the streets along which the surface railroad is proposed to be constructed, or in case of the failure to obtain the consents of the abutting owners, the substituted consent of the Appellate Division, but also the certificate of the board of railroad commissioners that the public convenience and public necessity require the construction of such road.

Until May, 1895, the certificate of the railroad commissioners was not necessary, but it was required when this application was made, and, as has already been observed, this defendant failed in its effort to secure such certificate. The legislature of 1896 passed an act (Chap. 649) entitled "An act to

validate and confirm certain consents heretofore given by the
local authorities of cities of the first and second class in the
construction, operation and maintenance of street surface rail-
roads therein." That act, if constitutional, operated to do
away with the necessity for the certificate of the railroad
commissioners in all cities of the first and second class, which
included the city of Buffalo, where consents had been given
by the local authorities within certain specified dates. The
legislature had the power in the first instance to have author-
ized the granting of franchises without the consent of the
railroad commissioners; and it also possessed the power, by
retrospective act, to cure any irregularity which existed by
reason of the refusal of the railroad commissioners to grant
certificates. The authorities as to the legislative power to
validate by subsequent legislation, acts done in assumed exe-
cution of statutory authority which has not been strictly
followed, are numerous and decisive. (*People* v. *Mitchell*,
35 N. Y. 551; *Town of Duanesburgh* v. *Jenkins*, 57 N. Y.
177; *Williams* v. *Town of Duanesburgh*, 66 N. Y. 137;
*Brownell* v. *Town of Greenwich*, 114 N. Y. 518.)

The questions relating to the constitutionality of this statute
will receive consideration later on.

The defendant company having failed to obtain the consent
in writing of the requisite number of persons owning prop-
erty abutting on some of the streets along which it was pro-
posed to build its railroad, made application to the Appellate
Division of the fourth department for the appointment of three
commissioners to determine whether its proposed street sur-
face railroad ought to be constructed and operated. Its peti-
tion, among other things, stated that the consent of the local
authorities of the city had been obtained; several of the
property owners filed answers to this petition, denying many
of the allegations contained in it, and among them the one
stating that the consent of the local authorities had been
obtained; they also averred that the petitioner had failed to
comply with section 59 of the General Railroad Law, and
demanded that the proceeding should be dismissed. It is diffi-

cult for one who has read the voluminous complaint in this action, teeming as it does with adjectives denunciatory of the alleged wrong done to the city by the common council in giving consent to the defendant company to construct its railroad, to believe that it is the same railroad as the one for whose construction the Appellate Division, in the place and stead of the adjoining property owners, gave consent. But such is the fact, and it will not be at all out of place to quote what the Appellate Division had to say upon the merits of the application in its opinion giving the reasons for confirming the report of the commissioners, who reported and certified to the court " that in their judgment the street surface railroad of the Buffalo Traction Company ought to be constructed and operated in East and West Utica street in the city of Buffalo." The court said : " Before discussing the several legal propositions to which our attention has been directed, it is proper to observe that our examination of the proofs accompanying the report of the commissioners satisfies us beyond any question that the conclusion reached by them respecting the necessity and propriety of constructing the proposed surface railroad through East and West Utica street is fully justified. Indeed, we fail to see how, with any regard to such proofs, they could have reached a different conclusion, and, therefore, we ought not to hesitate to grant the present application, unless satisfied that there is some legal obstacle in the way of confirmation." (*Matter of Buffalo Traction Company*, 25 App. Div. 447.) The court then proceeded to consider whether the proceedings by which the common council undertook to give its consent were regular, the effect of the statute validating the consent, as well as the questions relating to its constitutionality, and, as to all of these questions, it sustained the position taken by the Buffalo Traction Company and confirmed the report of the commissioners. The order of the Appellate Division was subsequently affirmed in this court. (155 N. Y. 700.) On their face, therefore, the proceedings taken were adequate to vest in the Buffalo Traction Company a franchise to operate its railroad. And, in

49

this case, as in other cases, where the face of the papers disclose the granting of a franchise, not only the corporation, but the public as well, have accepted them at their apparent value; for counsel at this bar stated, without challenge, that the defendant company at once commenced to build and put in operation the railway, and that the bonds and stock, issued to secure the money to pay for the work, have passed into the possession of the public.

But this plaintiff seeks to be the pioneer in a new movement looking to the destruction of securities in the hands of *bona fide* purchasers, and to that end he invites the court to go behind the consent of the municipal authorities and to inquire into the motives actuating one or all of the members of the common council, and if in the opinion of the court the motives are unworthy or corrupt, that then the court shall declare the consent void.

The complaint alleges that the common council made no attempt to get other street railroad corporations to bid for the grant or consent, although the said board had then pending before it one or more applications from other street railroad companies asking for a consent in many of the same streets, which applications they have refused to consider, and that more favorable terms could have been obtained from such companies. It may be observed, in passing, that the complaint does not allege that the other street railroad companies offered more favorable terms than the Buffalo Traction Company, but simply that more could have been obtained from them; how does not appear. It further alleges that the common council of said city, through its board of aldermen and councilmen, voted the consent to the defendant to construct its railway, wrongfully, willfully and corruptly and in violation of their official duties, and in waste of the property, funds, effects and estate of said city, and that they colluded with the personal representatives, incorporators and stockholders representing the defendant, to cheat and defraud the city, and that they acted with undue haste, in an improvident manner and in reckless disregard of the city's interest.

Impressive as this allegation is, when first read, it will be found on analysis not to allege a single fact which would legally support a conclusion that any member of the common council was bribed, or that he voted in favor of the consent through promise of gain to himself or others. Judge O'BRIEN well said, in *Talcott* v. *City of Buffalo* (125 N. Y. 280), that "The facts stated in the complaint, and which are well pleaded, must be deemed to be admitted by the demurrer, but the allegation that the proceedings of the common council, looking to a change in the manner of lighting the avenue, were illegal official acts, was not the averment of an issuable fact, but the statement of a legal conclusion, and, therefore, is not admitted." If this complaint were to be subjected to this test it would be found, notwithstanding its great length, barren of a statement of facts supporting the charge of corruption, which is, nevertheless, repeated with considerable frequency. However, I shall not stop to analyze the complaint, but shall treat it as if it alleged facts from which the inference would be required that the adoption of the consent was due to the bribery of one or more of the members of the common council. It is my view of the law that, reprehensible and regretable as such conduct is, the courts have not the power to inquire into the motives inducing legislative action, whether such action be taken by the legislature of the state or the common council of a city.

The appellant bases his hope of such action by the courts upon a statement in the opinions of this court in two cases, to the effect that an action by a taxpayer of a municipality to restrain the governing body thereof from official action clearly within its power, cannot be maintained, in the absence of a charge or allegation of fraud, collusion, corruption or bad faith, although it be averred that such intended action is unwise and without due regard to economy. (*Talcott* v. *City of Buffalo, supra ; Ziegler* v. *Chapin*, 126 N. Y. 342.) The latter case did not relate to the action of a common council, and in the former one the court, in holding that the taxpayer was not entitled to maintain the action, said that the governing body of a municipality

should not be restrained in its official action except on proof of
fraud or corruption, which was not alleged in that case. But
it was neither said nor suggested by the learned judge writ-
ing the opinion that, as to a matter of legislation by a gov-
erning body, the court could inquire into the motives, no
matter what the charge might be. After considerable inves-
tigation of the subject I feel warranted in saying that
there is no case in any court of last resort in this country
holding that the motive of legislation may be inquired into by
the courts and the legislation set aside, if in the judgment of
the court it was induced by dishonest and corrupt motives,
and we are thus brought to a consideration of the authorities
establishing the law upon that subject. Judge Cooley in his
work upon Constitutional Limitations, under the head of
"Inquiry into Legislative Motives," page *186, said: "The
courts must assume that legislative discretion has been prop-
erly exercised. If evidence was required, it must be supposed
that it was before the legislature when the act was passed ;
and if any special finding was required to warrant the passage
of the particular act, it would seem that the passage of the act
itself might be held equivalent to such finding. And although
it has sometimes been urged at the bar that the courts ought
to inquire into the motives of the legislature where fraud
and corruption were alleged and annul their action if the
allegation were established, the argument has in no case been
acceded to by the judiciary, and they have never allowed the
inquiry to be entered upon." And the words of Chief Judge
DENIO in the leading case of *People ex rel. Wood* v. *Draper*
(15 N. Y. 532–545) may well close the discussion on this par-
ticular branch of the subject: "If a particular act of legisla-
tion does not conflict with any of the limitations or restraints
which have been referred to, it is not in the power of the
courts to arrest its execution, however unwise its provisions
may be, or whatever the motives may have been which led to
its enactment. There is room for much bad legislation and
misgovernment within the pale of the Constitution ; but when-
ever this happens, the remedy which the Constitution pro-

vides, by the opportunity for frequent renewals of the legislative bodies, is far more efficacious than any which can be afforded by the judiciary. The courts cannot impute to the legislature any other than public motives for their acts. If a given act of legislation is not forbidden by express words, or by necessary implication, the judges cannot listen to a suggestion that the professed motives for passing it are not the real ones." To the same effect are the cases of *People ex rel. McLean* v. *Flagg* (46 N. Y. 401); *People ex rel. Bolton* v. *Albertson* (55 N. Y. 50–54); *Baird* v. *Mayor*, etc. (96 N. Y. 581); *W. W. M. Co.* v. *Shanahan* (128 N. Y. 346); *People ex rel. Sturgis* v. *Fallon* (152 N. Y. 1–11).

The next proposition is, that the rule approved by the authorities quoted (*supra*) is applicable to the legislative action of a common council as well as to that of the legislature of the state. Judge Cooley says: " And the same presumption that legislative action has been devised and adopted on adequate information, and not under the influence of corrupt motives, will be applied to the discretionary action of municipal bodies and of a state legislature, and will preclude in the one case as in the other all collateral attacks." (Cooley Const. Lim., page 209.) In *Milhau* v. *Sharp* (15 Barbour, 212) the court, in speaking of the common council of the city of New York, said : " As far as it acts in the exercise of its public political powers, and within the limits of its charter, it is vested with the largest discretion. And whether its laws are wise or unwise ; whether they are passed from good or bad motives, it is not the province of this court to inquire." In *People ex rel. Hotchkiss* v. *Bd. Suprs.* (65 N. Y. 222) it was held: " The board of supervisors are mere local legislative bodies, in many respects of limited power ; but where they have jurisdiction, they may act for their county precisely as the legislature may act for the state. If they act without jurisdiction their acts are void, the same as is the action of the legislature when in violation of any provision of the Constitution." In *City of Buffalo* v. *N. Y., L. E. & W. R. R. Co.* (152 N. Y. 276) it was held that the legislature may confer upon

common councils of cities authority to pass municipal ordinances, and such as are passed in pursuance of such authority have the force of law and are as obligatory as if enacted by the legislature itself. In *People ex rel. O'Connor v. Bd. Super.* (153 N. Y. 370) and in *People ex rel. Wakeley v. McIntyre* (154 N. Y. 628) it was held that, within the limits of the power delegated to supervisors by the legislature under the authority conferred upon it by the section referred to, each board of supervisors is clothed with the sovereignty of the state to legislate as to all details precisely the same as the legislature might have done in the premises. In *Weston v. City of Syracuse* (158 N. Y. 274) we had before us a case where the answer alleged, and the defendant offered to prove, that a resolution upon which the plaintiff relied to establish and prove his cause of action, " was passed " by the common council " collusively, corruptly and fraudulently and as the result of a corrupt bargain in and by which it was agreed that a large sum of money should be paid by said contractors for a vote in favor of said resolution, which said money was paid, and that said resolution by reason thereof is null and void and of no effect as a modification of said contract." The court, recognizing and asserting the existence of the rule that prevents an inquiry into the motives inducing legislative action, whether such action be that of a common council, board of supervisors or a state legislature, held that not all of the action taken by a common council or board of supervisors is legislative ; that there are many duties devolved upon each of said bodies that are administrative in character, and not at all impressed with the character of sovereignty, and as to such duties we held, following the rule suggested in *Talcott v. City of Buffalo* (*supra*), that the action might be attacked for fraud and corruption, and, if the charge should be proved, be declared of no effect by the courts. It was the judgment of a majority of the court that the act of the common council, which was the subject of inquiry in that case, was an administrative act, and not a legislative one, and, hence, that the evidence should have been received. The decision in that case necessarily

covers every question which has been discussed under this head, leaving open but one possible question, if perchance there be any room for question about it, *i. e.*, whether the action taken by this common council in granting the consent was a legislative act. Indeed, in the argument by which the determination was reached that the act then under consideration was administrative, it was necessarily inferentially decided that such acts as the one in question are legislative acts. It was held in *People ex rel. O'Connor* v. *Supervisors* (*supra*) that the action of the board of supervisors in undertaking to establish a fire district in the town, under section 37 of the County Law, was legislative in character, and in *People ex rel. Wakeley* v. *McIntyre* (*supra*) it was held that "Boards of supervisors, in the exercise of the legislative powers conferred upon them by the Constitution, are not confined in their action to the bare letter of the statute enacted to carry out the constitutional provisions, but may, in the exercise of a sound discretion, act under powers that are fairly to be implied," and that to that end each board of supervisors is clothed with the sovereignty of the state and is authorized to legislate as to all details precisely as the legislature might have done in the premises.

The municipal authorities granting this consent derived their power directly from the Constitution, which forbids the legislature from enacting any law authorizing the construction or operation of a street railroad except upon condition that the consent of the local authorities having the control of the street or highway upon which it is proposed to construct or operate the road, be first obtained. (Article III, section 18, Constitution.)

Such was the law at the time of the adoption of this provision of the Constitution, but it had not always been the law. Indeed, in the early history of the state the consent of the local authorities and the property owners to construct street surface railroads in city streets was not required (*Ingersoll* v. *Nassau Electric Railroad Co.*, 157 N. Y. 453–456), and apparently for the purpose of putting it beyond the power of the legislature to deprive the local municipal authorities of a

determining voice in the matter, the clause in the Constitution affecting this subject was inserted.    Now the local municipal authorities under the Constitution, as supplemented by the provisions of the Railroad Law, have the power to determine upon what streets, if any, there shall be constructed a surface railroad; to which of two or more corporations, if so many applicants there be, it shall be given; the amount of the bond that may be required for the purpose of protecting the municipality against injury to the streets by their tearing up, and the many other conditions that experience has taught municipal authorities it is wise to impose in order to fully protect the public interests.    In the exercise of this power the local municipal authorities are, by the Constitution and the statute, clothed with sovereignty and, therefore, beyond the direction and control of the courts.

The question we have been considering was before the court in *Adamson* v. *Nassau Electric Railroad Company* (89 Hun, 261), and the same conclusion reached, Judge BROWN writing.

It is urged that the court has but one forward step to take in order to bring the action of a common council, in all legislative matters, before the courts for review, but the step is a long one and a very dangerous one as well, and the argument made in favor of it is most happily met by Judge O'BRIEN, in *Talcott's Case (supra)*, in these words: "Whatever evils may exist in the government of cities that are due to mistakes, errors of judgment or the lack of intelligent appreciation of official duty, must necessarily be temporary, compared with the mischief and inconvenience which judicial supervision, in all cases, would ultimately produce.    Local officers are elected or appointed for such brief periods that frequent opportunity is afforded to the public and the taxpayers interested in their official acts, to change them and substitute others in their place."

We come now to a consideration of the question relating to the constitutionality of chapter 649 of the Laws of 1896, and its consideration makes it necessary that the title as well as the entire act should be before us.    They read as follows:

" An act to validate and confirm certain consents heretofore given by the local authorities of cities of the first and second class in the construction, operation and maintenance of street surface railroads therein.

" Section 1. All consents given since December first, eighteen hundred and ninety-five, and prior to February first, eighteen hundred and ninety-six, by the local authorities of any city of the first or second class, to the construction, operation and maintenance of a street surface railroad in any such city by a railroad corporation which has not complied with the provisions of section fifty-nine of the Railroad Law or has failed to obtain the certificate therein provided for, are hereby validated and confirmed, and any such corporation may construct, operate and maintain a street surface railroad over, along and upon the streets, avenues, highways and public places described in such consent upon obtaining the consent of the owners of property bounded on such streets, avenues, highways or public places as provided by law.

" Section 2. This act shall take effect immediately."

The complaint alleges that the defendant company caused this statute to be passed, and in support of such allegation it quotes from a letter of the attorney for the defendant company to the mayor, and it is now urged that by demurring to the complaint the defendant company admits that the act was drawn and passed to relieve it, and that the measure took the form of a general bill in order to evade the Constitution. This position is not well taken. Only the issuable facts stated in the complaint are admitted by the demurrer, and such averments do not constitute issuable facts. Whether an act of the legislature be constitutional cannot be determined by evidence outside of the statute itself. The test of constitutionality is always one of power. (Cooley Const. Lim. 5th ed., 220; 3 Am. and Eng. Ency. of Law, 674 and 675, and cases cited.) The motive actuating, and the inducements held out to, the legislature are not the subjects of inquiry by the courts. The courts are bound not only to assume that the legislature acted with the best motives and with the sole purpose of accomplish

ing what the statute purports, but where there is room for two constructions of a statute, both equally obvious and reasonable, they must assume that the legislature did not overlook the provisions of the Constitution and designed the act to take effect. (*Matter of N. Y. & L. I. Bridge Co.*, 148 N. Y. 540, 551.) It is the duty of the courts as well to give the force of law to an act of the legislature whenever it can be so construed and applied as to avoid conflict with the Constitution. (Cooley Const. Lim. 5th ed., 218 and 219.) The gratuitous and makeweight allegations in the complaint touching the source of inspiration of the statute, are, therefore, not entitled to consideration, as the authorities heretofore cited in support of the proposition that the motives prompting legislative action cannot be inquired into, abundantly demonstrate.

The complaint further alleges: " That the said bill, known since its passage as chapter 649 of the Laws of 1896, as aforesaid, was not printed and upon the desks of the members in its final form for as many as three calendar days prior to its final passage, nor did the governor, or the acting governor, prior to such passage of the said bill, certify to the necessity of its immediate passage, or dispense with the said requirement of said Constitution, that the said bill should lie on the desks of the members of the legislature for at least three legislative days prior to its passage. And this plaintiff alleges that, by reason of the disregard of the said constitutional requirement, the said act is unconstitutional, null and void and of no effect." This allegation, it will be observed, adopts the phraseology of section 15, article 3, of the Constitution, with a preface which makes of it merely an assertion that the organic law was not complied with, and, standing alone, it is simply a conclusion of law. And it does stand alone without the support of a single allegation of fact touching the printing of the bill and the time when first " it was placed upon the desks of the members." If the facts were before the court we could quite readily determine whether the printed bill was on the desks of the members for three days prior to its passage, by following the rules laid down in

section 27 of the Statutory Construction Law, which provides that a calendar day includes the time from midnight to midnight, that Sunday or a public holiday, other than a half-holiday, if it is the last day, must be excluded from the reckoning, otherwise it must be counted, and that in making the computation the day upon which the event happens is deemed the day from which the reckoning is made, which day must be excluded in making the reckoning. As it is, we cannot apply those rules to the facts, because they are not pleaded, the pleader having elected instead to state as a conclusion of law, and in the language of the Constitution, that the bill was not printed and on the desks for three days prior to its final passage. Under our system of pleading facts only must be stated, and this means the facts as contradistinguished from the law, from argument, from hypothesis and from the evidence of the facts. (Ency. P. and P., vol. 12, page 1022, and cases cited and digested in the twenty pages following.) These cases establish that, within the rule adopted by the courts, the allegation under consideration is a conclusion of law. The allegation of a conclusion of law raises no issue, need not be denied and its truth is not admitted by a demurrer to the complaint containing it. (*Buffalo Catholic Institute* v. *Bitter*, 87 N. Y. 250–256.)

The next question is whether this is a general law or a local and special law. If the former, then if the views so far expressed be sound, this respondent is entitled to have the questions propounded answered in the negative, and this order affirmed ; if the latter, then still other questions will have to be considered. The recent decision of this court in *Matter of Henneberger* (155 N. Y. 420) seems to have emboldened the appellant to argue that this is a local or special law instead of a general one. That question has been presented many times in this court when other statutes were under consideration, but of the decisions rendered thereon not one has found a place in the appellant's brief, and we shall soon show that the *Henneberger* case does not sustain his contention. This statute is general in form, applies to all the cities of the state of

the first and second class, and to every street railroad therein that obtained consents within the dates named, and has not obtained the certificate required by section 59 of the Railroad Law, and, hence, on its face, it is a general bill within the meaning of that term as used in the Constitution, according to the decisions of this court. (*Matter of N. Y. El. R. R. Co.*, 70 N. Y. 327; *In re Church*, 92 N. Y. 1; *People ex rel. N. Y. El. L. Co.* v. *Squire*, 107 N. Y. 593; *Ferguson* v. *Ross*, 126 N. Y. 459; *People* v. *Dunn*, 157 N. Y. 528–540.) In *Church's* case the statute granted to the board of supervisors in any county containing an incorporated city of one hundred thousand inhabitants, where contiguous territory in the county had been mapped out into streets and avenues, power to lay out, open, grade and construct the same, and to provide for the assessment of damages on the property benefited, and the court held that it was not a local law within the meaning of the State Constitution. In the *Squire* case the act was entitled " An act providing for placing electrical conductors under ground in cities of this state and for commissioners of electrical subways." In answer to the contention of the appellant, that the act was a private or local bill, the court said : " This act is general in its terms, applying to all cities in the state, of a certain class and to every corporation, carrying on a business requiring the use of electrical wires or conductors in such cities. That the number of such cities is limited or restricted, does not make the bill a private or local one, within the constitutional meaning and intent of these words, was expressly decided in the cases referred to. How many companies there are to which this bill applies we have no means of determining, but the fact that a general law is passed regulating the operations of all such companies, in cities of the class referred to, does not constitute it a private or local bill, although it may happen that such companies are all located in one or more cities of the state." The argument of the court answers completely the suggestions of appellant's counsel on this appeal. This act is general in terms and applies to every situation, like that therein described, in all of the cities of the

first and second class in this state.    How many there may be we
have no means of ascertaining, and it is not necessary for the
one claiming the benefits of the statute to show that other cor-
porations in the same or other cities enjoy the advantages of it.

The constitutionality of a statute is not determined by
matters outside of the statute, but from the statute itself.    In·
the *Henneberger* case it was not the intention of this court to
overrule or disregard any of the cases to which I have referred,
as their discussion in the prevailing opinion and in *People* v.
*Dunn* (*supra*) shows, the position taken in that case being
that a very different situation was presented than in any of
the cases previously considered by the court, and within which
this one indisputably comes.    Nor was the court unfaithful to
the rule which prohibits the courts from going outside of the
statute to inquire into the motives inducing legislation.    In
the statute itself the court found the proof of the legislative
intent to confine the operation of the statute to a particular
locality in the face of the provisions of the Constitution for-
bidding the legislature from passing any private or local bill
laying out or altering highways.    (Art. 3, § 18.)    Seven dif-
ferent conditions were requisite, according to that statute, to
locate the place entitled to its advantages, viz.: 1. The town
must have a total population of eight thousand or more inhab-
itants.    2. Must contain an incorporated village of not less
than eight thousand and more than fifteen thousand inhab-
itants.    3. It must not be located in the county of Madison.
4. The highway must extend within the limits of such town.
5. And must extend within the limits of such incorporated
village for a distance of at least two miles and a half.    6. The
improvement to be for a certain specified portion thereof not less
than two miles and a half in length.    7. Such improvements
to be wholly without the limits of the incorporated village.

The conclusion reached was that these conditions operated
to point out the locality as effectively as though it had been
designated by name.    There is no constitutional restriction
upon the power of the legislature to validate and confirm con-
sents to the construction and operation of street railroads, not-

withstanding the failure to obtain the certificate required by section 59 of the Railroad Law, and so we have simply to inquire whether, tested by the usual standards, this is a general or local statute within the intent of the Constitution. Thus tested, this act is found to be a general law within all of the decisions in this state by which the standards have been established, including the *Henneberger* case. There are not seven conditions present in this statute pointing out some particular railroad to be benefited. There is only one condition, and that is that the consents ratified shall have been given between certain specified dates, and it cannot be said of that condition that it pointed out that a single railroad was aimed at as conclusively as if the railroad had been named in the act. This case is not, therefore, within the rule of the *Henneberger* case, but is within the rule laid down by many decisions in this state, a few of which we have cited.

Having reached the conclusion that the act is a general one, it becomes unnecessary to consider the questions that the appellant propounds, based upon the hypothesis that the act is private or local.

I advise that the questions be answered in the negative and that the order be affirmed, with costs.

GRAY, J. (dissenting). I think enough is alleged by the plaintiff to impeach the acts of the common council of the city of Buffalo for fraud in the granting of the consent to the traction company.

It would be disastrous to hold that, where a municipal body is charged, as it is here, with fraudulent use of power and collusion, and a consequent waste of municipal property, no case was presented for judicial inquiry.

I think there should be a trial, as to this question, and an opportunity thus afforded for the plaintiff to sustain his allegations by such evidence as he may have.

O'BRIEN and HAIGHT, JJ., concur generally with PARKER, Ch. J., for affirmance; MARTIN, J., concurs in result; BARTLETT and VANN, JJ., concur with GRAY, J., for reversal.

Order affirmed.