# MEMORANDA

## OF

WILLIAM C. BAKER, Plaintiff, *v.* NEW YORK MUNICIPAL RAILWAY CORPORATION and Another, Defendants.*

(Supreme Court, Queens Trial Term, December, 1916.)

*Injunction — elevated railway — sufficiency of consents of property owners — consent of municipality — Railroad Law, § 171.*

ACTION for an injunction.

Skinner & Bermant, for plaintiff.

George D. Yeomans, for defendants.

BLACKMAR, J.   This is an action to enjoin the construction of an elevated road in front of the plaintiff's premises in Jamaica avenue on the ground that the requisite consents of the property owners have not been obtained.   I shall briefly consider first the sufficiency of the consents as of the date when they were submitted to the public service commission, to wit, July 29, 1914, and, second, the right of the property owners to revoke the consents and of the railroad company to show consents subsequently obtained.   The municipal consent given by the city of New York to the construction and operation of the road is available also as a consent of the city as a property owner.   The consent is not a conveyance or grant; it passes no property from the city to the railroad and therefore it

---

*Affirmed by the Appellate Division, Second Department, December 7, 1917.

is not necessary that the commissioners of the sinking fund should act. The inquiry here is simply as to the validity of the franchise, without which the elevated railroad structure would be a public nuisance. The franchise or right to use the street, derived from the legislature, has no effect upon the abutting owners' easements of light, air and access. Incidentally the consent may operate as an abandonment of the easement and so deprive the consenting owner of the right to compensation for impairment of his easements, but this result has no relation to the effect of the consents under the Constitution and laws enacted pursuant thereto. That the municipal consent operates also as a consent of the city as a property owner is decided in *Herzog* v. *New York Elevated R. R. Co.*, 76 Hun, 486; affd., 151 N. Y. 665. This case is questioned in *Storms* v. *Manhattan R. Co.*, 178 N. Y. 493, but a perusal of the latter case discloses that the question there discussed is the effect of the consent as a release of the private easements and not its effect as a condition precedent to the grant of a franchise. The policy of the law on this subject is plainly shown in the Railroad Law, wherein it is provided (§ 171), " and the consent of the local authorities shall operate as consent of such city, village or town as the owners of such property." The Cypress Hills Cemetery consents for property in value of $662,500. The consent is executed and proved as the act of the corporation. It is signed by the president, the corporate seal is affixed, and the proof of execution shows that it was signed and sealed by order of the board of directors. It is the owner of the property and has consented. This satisfies the requirements of the Constitution and the laws enacted pursuant thereto. It is true, as plaintiff points out, that the cemetery cannot sell, mortgage or lease its real property without leave of the court, and that such leave has not been obtained for the consent. If, therefore, the consent passed title to real property or any

interest therein it would not be competently executed. But it does not. I know of no reason why a consent, under certain circumstances, may not be valid, as one of the conditions precedent to the passing of a franchise from the state to a railroad company, without the incidental and entirely unrelated effect of abandoning an easement appurtenant to the land. *Adee* v. *Nassau Elec. R. Co.*, 65 App. Div. 529. What the Constitution requires is that the owners of one-half in value should consent to the construction and operation of the road. Under the rules laid down regarding the burden of proof in *Adee* v. *Nassau Elec. R. Co.*, 65 App. Div. 529, it appears that the cemetery owns the land and has consented. Whether the consent deprives the cemetery of compensation for impairment of easements in the street appurtenant to the land is wholly irrelevant. It is established that certain of the consents were not signed by the owners. These are for block 185, lot 41, value $6,000; block 33, lot 661, value, $7,400; block 1032, lot 1, value $7,000; block 830, lot 58, one undivided half, value $20,500, and also as to one undivided half of certain premises held as tenants in common by husband and wife, where the consent was signed by the husband only, value $30,300. The consents were therefore void as to property of the value of $71,200. Other questioned consents I think were valid. If the consents are not entirely nugatory, as in the above cases, where they were not signed by the owners, their validity cannot be questioned by any other property owner. The question can be raised only by the owner of the property for which the consent was given or by the state — probably only by the state. There is no requirement that an agent must be authorized in writing to make the consent, and where the evidence is undisputed that the owner authorized the consent, especially where the owner comes on the witness stand and testifies that he or she authorized it, as was the case as to some of the questioned consents,

46

the consent must be held sufficient. If the land is mort-
gaged, the mortgagee's interest is personal property,
and he is not the owner. This is also the case if the
mortgage is in form a conveyance and the defeasance
is not expressed in the deed, as was the case in block
228, lot 1. A trustee in whom the legal title is vested
has, I think, the power to consent, as he is the owner.
This is the case with block 1045, lots 13 and 18. The
Rapid Transit Law requires that in addition to the
municipal consent and the consent of the property
owners the permission and approval of the public
service commission must be obtained. This is a sub-
stitute for the certificate of convenience and necessity
by the railroad commissioners formerly required. On
March 19, 1913, the said public service commission
issued to the New York Municipal Railroad Company
a certificate authorizing it to construct and operate the
elevated railroad in question. The certificate provided
that the authorization or license thereby granted, if
the commission should so determine after due hearing,
should be void unless, within one year from the time of
the acceptance of the certificate by the Subway Com-
pany, the company should obtain and submit to the
commission the property owners' consents or the
determination of commissioners appointed by the
Appellate Division, provided that the commission
should have power to extend the time. Thereafter the
time was extended to August 19, 1914. On July
twenty-ninth consents of owners of property aggre-
gating in value $5,927,600 were submitted to the public
service commission. Counting the city as consenting
as an owner, it appears on the face of the consents that
the owners of property of the value of $6,822,600 had
consented. Of these I find that the consents to the
extent of land valued at $71,200 were invalid; so that
at that time property owners representing a valuation
of $6,751,400 had consented. The total valuation of
property along the route was $13,330,650. One-half

thereof is $6,665,325. According to these figures the requisite consents of the property owners had, by a narrow margin, been acquired, and the franchise vested in the defendants. As the defendants have the franchise to build in the street, the structure is not a nuisance and the plaintiff must fail in the action. Whatever right consenting property owners have to revoke their consents certainly terminates when the requirements of law are complete and the right to build and operate the road has vested in the defendants. It is then property and cannot be thereafter destroyed by the change of mind of the consenting property owners. The terms of the certificate of the public service commission do not limit the time within which the consents of property owners must be obtained. It reserves to the commission the power to revoke its authorization unless the property owners' consents are obtained within one year, or such further time as the commission may grant. The revocation must be by affirmative action of the commission after due hearing. In the absence of such acts the authorization is not affected by the failure to obtain the consents within the requisite time and even a revocation of the authorization does not invalidate the consents. I think, therefore, that subsequently acquired consents can be shown, and, as the case involves questions in which the people of the state are interested, no technicality of pleadings or practice should prevent a decision upon the facts actually existing. Whether the city as a party to the contract (Exhibit H), which is the origin of the defendants' right in the street, has such an interest in the subject-matter of the action as makes it a necessary party has not been raised by the parties, and I do not consider it.

Judgment for defendants, with costs.