MARJOHN REALTY CO., INC., *v.* CITY OF LONG BEACH. **763**

---

MARJOHN REALTY COMPANY, INC., Plaintiff, *v.* CITY OF LONG BEACH, WILLIAM H. REYNOLDS, Individually and as Mayor, LONG BEACH RAILWAY COMPANY and ALFRED M. RITTER, Defendants.

Supreme Court, Nassau County. March, 1924.

Municipal corporations — city of Long Beach — consent by city council of which mayor is member to franchise for street railway controlled by mayor is invalid and in violation of Penal Law, § 1868, and General City Law, § 3 — general rule as to fiduciaries applies to such consent — complaint in taxpayer's action under General Municipal Law, § 51, states cause of action against mayor and street railway company — city proper but not necessary party — complaint dismissed as to agent of mayor.

The consent to a franchise for a street railway in the city of Long Beach given by the city council, of which the mayor was a member, to an agent of the mayor and assigned to a street railway company controlled by the mayor is illegal and invalid, being contrary to the rule that a private fiduciary may not serve two masters nor a master and himself in the same business, and also being in violation of section 1868 of the Penal Law and section 3 of the General City Law providing that officials and city officers are not to be interested in contracts.

A complaint in a taxpayer's action brought under section 51 of the General Municipal Law in which it is sought, among other things, to have the consent canceled and declared of no effect and to have the damages sustained by the city paid, states a cause of action against the mayor and the defendant railway company, but should be dismissed as to the agent of the mayor.

The city is a proper but not a necessary party defendant.

Motion to dismiss complaint.

*Charles L. Apfel* (*Samuel D. Johnson*, of counsel), for plaintiff.

*Charles C. Clark* and *Louis Goldstein* (*J. Broches Aronoff*, of counsel), for defendants.

Lazansky, J. While there are at least two causes of action, not separately stated, attempted to be alleged in the complaint, the one to which the more attention has been directed is, in substance, that the council of the city of Long Beach, of which the mayor was a member, with full knowledge that one Ritter was acting for and as the agent of the mayor, gave to said Ritter and his assigns a consent to a franchise for a street railroad in the city of Long Beach and that when said consent was given to said Ritter, it was so given and was received by him to enable him to assign his rights therein and in the resulting franchise to a railway company controlled by the mayor. The giving of the consent by the council was a legislative act. *Kittinger* v. *Buffalo Traction Co.*, 160 N. Y. 377; *Adamson* v. *Nassau Electric R. R. Co.*, 89 Hun, 261. It is well settled that courts will not inquire into the motives which actuate a legislative act, however corrupt they may be. *Kittinger* v. *Buffalo Traction Co.*, *supra*. But that rule is not decisive of this case. Here, it is not a question of why the council gave the consent, but as to whom the council gave it. The mayor is a servant of the municipality and he may not be the beneficiary of any transaction by him with it. The general principles of law and equity as to transactions and contracts by and with persons sustaining fiduciary relations, of course, apply to municipal officers. A private fiduciary may not serve two masters nor a master and himself in the same business. *Gardner* v. *Ogden*, 22 N. Y. 327. As to its application to municipal officers see 2 Dillon on Municipal Corporations, 1140. This principle has been recognized, in part, in this state by the enactment of section 1868 of the Penal Law and section 3 of the General City Law, which are, respectively, as follows:

" Officials not to be interested in sales, leases or contracts. A public officer or school officer, who is authorized to sell or lease any property, or to make any contract in his official capacity, or to take part in making any such sale, lease or contract, who voluntarily becomes interested individually in such sale, lease or contract,

directly or indirectly, except in cases where such sale, lease or contract, or payment under the same, is subject to audit or approval by the commissioner of education, is guilty of a misdemeanor."

" City officers not to be interested in contracts.   No member of the common council of any city shall, during the period for which he was elected, be capable of holding under the appointment or election of the common council any office the emoluments of which are paid from the city treasury, or paid by fees or compensation directed to be paid by any act or ordinance of the common council, nor shall the mayor or any alderman, school commissioner or other public officer of any city be directly or indirectly interested either as principal, surety or otherwise, in any contract, the expense or consideration whereof is payable out of the city treasury, but this section shall not affect the right to any fees or emoluments belonging to any office.   An officer of any city who violates any provision of this section shall be guilty of a misdemeanor and on conviction thereof his office shall be vacant."

These statutes are but declaratory of the common law.   *Smith* v. *City of Albany,* 61 N. Y. 444.   But it is urged that the rule stated and the statutes cited are applicable only to sales and leases of property and to contracts and not to a consent to a franchise because that is not a contract within the meaning of the rule or the statutes. The consent was given pursuant to the Railroad Law (Art. 5). A grant from the state is the foundation of every privilege or right to an individual or corporation to use the city streets for public or quasi-public purposes for individual profit.   3 Dillon Mun. Corp. (5th ed.) 1948; *Beekman* v. *Third Avenue R. R. Co.,* 153 N. Y. 144; *Adamson* v. *Nassau Electric R. R. Co., supra; Adee* v. *Nassau Electric R. R. Co.,* 65 App. Div. 529; *City of New York* v. *Bryan,* 196 N. Y. 158.   In New York the Constitution limits the power of the legislature to authorize the construction or operation of a street railroad by a condition that the consent of the owners of one-half in value of the property bounded on, and the consent also of the local authorities having the control of that portion of a street or highway upon which it is proposed to construct or operate such railroad, be first obtained.   Therefore, although the franchise is derived from the state by act of the legislature, general or local, the consent of the municipality must be obtained before the right to exercise the franchise is complete.   3 Dillon Mun. Corp. (5th ed.) 1942.   The consent is only a limitation or restriction on the action of the legislature.   The city has no power to alienate the city public streets.   *Adamson* v. *Nassau Electric R. R. Co., supra.*   If, therefore, a franchise be a contract, it appears that the city here did not grant the franchise but only a consent, and, therefore, the stat-

utes would have no application. But no such narrow construction should be given to the common-law rule, that a public official may not be the beneficiary out of the city's property and privileges. Although the consent may not be property (*Baker* v. *N. Y. Municipal Ry. Corp.*, 181 App. Div. 939, affg. judgment on opinion of Blackmar, J., 102 Misc. Rep. 719), it may be a thing of value to the city. As a condition thereof, a license fee may be prescribed (*Mayor* v. *E. A. R. R. Co.*, 118 N. Y. 389; *City of Jamestown* v. *Home Telephone Co.*, 125 App. Div. 1); the city may require the railroad to agree to pave the entire street. *Mayor, etc., Worcester* v. *Worcester Cons. St. Ry.*, 192 Mass. 106. It may be fairly assumed that the acceptance of the consent which enables the interested parties to have a franchise is sought for material advantages that it is expected to confer. But even if no advantages were contemplated the same rule would apply. *Smith* v. *City of Albany*, 61 N. Y. 444; *People ex rel. Schenectady Ill. Co.* v. *Board of Supervisors*, 166 App. Div. 758, where the public officer was a nominal stockholder of the beneficiary. There seems to be no basis whatsoever for holding that the general rule does not apply to such a consent. It is not the motive of the act of the council which is the essence of the wrong. The receipt by one of their number or some other public official is that which is offensive to sound morals. The complaint alleges that the councilmen, other than the mayor, knew their associate was to be the beneficiary of the franchise, which could only become effective upon their consent. It seems to me whether they knew it or not makes no difference. As stated, the receipt of it by the mayor is the evil against which the rule exists. *Beebe* v. *Board of Supervisors*, 64 Hun, 377. The consent is a constitutional prerogative of the municipality. To exercise it for the benefit of one of the city's servants violates the spirit and the letter of this well-established doctrine. The giving of the consent was, therefore, an illegal act.

The next question is whether or not the complaint states a cause of action in this connection under section 51 of the General Municipal Law.

The relief sought is that the contract, by which is meant the consent, be canceled and declared fraudulent, void and of no effect, and that *said defendant* be directed to pay into the funds of the city of Long Beach any and all damages sustained by said city by reason of the tearing up of the streets therein and the cost of replacing the pavements and *they* be directed to account for any and all damages sustained by said city. The tendency has been to extend the benefits of the operation of section 51, but I have not been advised of any case where a taxpayer is permitted, in effect, to begin

an action for damages for trespass. There is no demand that the mayor be required to restrain the railway company from using the streets. Whether a taxpayer's action may be brought for that purpose, assuming the consent to be void, may be doubtful. *Southern Leasing Co.* v. *Ludwig*, 217 N. Y. 100. Of course, in this case property in which the city is interested is involved, while in the *Southern Leasing Co.* case there was no property of the city involved. In *Wenk* v. *City of New York*, 171 N. Y. 607, a taxpayer's action against the comptroller and the holders of certain leases to cancel the leases and to restrain the comptroller from collecting rents thereunder was sanctioned. There it was sought to restrain the comptroller from doing something alleged to be illegal, and the cancellation of the leases would have restored the property to the city. Here, an annulment of the consent might restore to the city the complete control of the street free from railroad use, and thus the action come within the provisions of the section. There is, however, what seems to be a fatal objection to the maintenance of this action. As stated above, the franchise which the railroad company now holds is granted by the state and not by the city. In *Matter of Clements*, 191 App. Div. 279, the court was considering an application for a peremptory writ of mandamus directing Brooklyn borough officials to remove certain poles and overhead wires on certain streets, upon the ground that the lighting company which had placed and was maintaining the poles there had no franchise to use the streets to carry on the business of supplying electricity. Mr. Justice Jaycox, writing for the court, after citing a number of cases, states as follows: " I think it is the right and duty of the Attorney-General alone to bring an action against a person who usurps, intrudes into or unlawfully holds or exercises within the State a franchise." Such an action is maintainable by the attorney-general. Civ. Prac. Act, § 1208, formerly Code Civ. Pro. § 1948, subd. 1; *People* v. *Bleecker Street & Fulton Ferry R. R. Co.*, 140 App. Div. 611; affd., 201 N. Y. 594. The rights of a taxpayer cannot be greater than those of the city. If the city cannot maintain an action against the railway, the citizen cannot. The city cannot maintain an action to determine the status of a franchise. *City of N. Y.* v. *Bryan*, 196 N. Y. 158.

Paragraph XVI alleges that the mayor used city employees and the city's money and other property in and about the construction of the said railway. That is a statement of facts. It is not necessary to plead how the money was procured. It must be assumed that there was no authority to appropriate public property for a private use. The charter of the city does not authorize it. Therefore, the mayor unlawfully used the time of city employees and the

property of the city for the purposes named. As to that there is a cause of action stated against defendant Reynolds. *Hicks* v. *Cocks*, 167 App. Div. 862. The city may not be a necessary but it is a proper party for a complete determination of the rights of the parties. Defendant railway company is a proper party as it retains property of the city illegally appropriated to its use, restitution of which may be enforced. Gen. Mun. Law, § 51; *Rice* v. *Glens Falls Publishing Co.*, 86 Misc. Rep. 503. This seems to be the only cause of action stated in the complaint. Since, however, there is a cause of action stated, the motion will have to be denied, except as to defendant Ritter, as to whom no cause of action is stated. Motion denied except as to defendant Ritter, as to whom it is granted.

Ordered accordingly.