<hr />

PEOPLE v. CONSOLIDATED GAS CO.

(Supreme Court, Appellate Division, First Department.   March 5, 1909.)

1. CORPORATIONS (§ 31*)—"FRANCHISES."
     Strictly speaking, the franchise of a corporation consists of the rights, powers, and privileges given by the act of the Legislature incorporating it, or the certificate of incorporation creating its existence.
     [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 101, 102; Dec. Dig. § 31.*
     For other definitions, see Words and Phrases, vol. 3, pp. 2929–2941; vol. 8, p. 7666.]

2. QUO WARRANTO (§ 17*)—"FRANCHISES"—USURPATION.
     Code Civ. Proc. § 1948, provides that the Attorney General may maintain an action against a person who usurps, intrudes into, or unlawfully

*For other cases se⁀ same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

holds or exercises a franchise within the state. *Held*, that the Attorney General may not maintain an action against a gas company to prevent further exercise of its rights in certain streets on the ground that municipal grants or consents to use such streets have terminated by expiration of the period for which they were given, since such consents are not "franchises" within the statute, and since, if they were, the matter is a local one, within the control of the city, which may by appropriate proceedings effectuate any withdrawal of its consents.

[Ed. Note.—For other cases, see Quo Warranto, Dec. Dig. § 17.*]

Appeal from Special Term, New York County.

Action by the People against the Consolidated Gas Company of New York. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

William A. Deford, Deputy Atty. Gen., for the People.

John A. Garver, for appellee.

LAUGHLIN, J. This is an action brought by the Attorney General, in the name of the people of the state, to have it adjudged that certain consents or grants to lay and maintain pipes in certain streets for the distribution of gas, alleged to have been franchises given or made by the local authorities of the city of New York to the defendant and the constituent companies whose rights it has acquired by merger and otherwise, have ceased, terminated, and expired by reason of the expiration of the period for which the same were given, and enjoining the defendant from the further exercise of any rights thereunder, and from further using the mains and gas pipes laid in the streets pursuant to such consents or grants.

The only authority claimed for the action is section 1948 of the Code of Civil Procedure, which, so far as material to the question now presented, provides as follows:

"The Attorney General may maintain an action, upon his own information, or upon the complaint of a private person, in either of the following cases:

"(1) Against a person who usurps, intrudes into, or unlawfully holds or exercises, within the state, a franchise, or a public office, civil or military, or an office in a domestic corporation."

Subdivision 2 of this section is concededly not in point, for it relates to the forfeiture of a public office. It has been authoritatively adjudicated that subdivision 3 of this section relates only to individuals, and does not embrace a corporation (People v. Equity Gaslight Co., 141 N. Y. 232, 36 N. E. 194); and subdivision 4, by its express terms, relates only to foreign corporations.

A very serious question is presented at the outset as to whether the provisions of subdivision 1 of section 1948 of the Code of Civil Procedure, hereinabove quoted, apply to a corporation. It is contended by the learned counsel for the respondent that this action cannot be maintained upon any theory. The provisions of article 4, tit. 2, c. 15, of the Code of Civil Procedure, being sections 1797 to 1803, inclusive, authorize an action by the Attorney General, by direction of the Legislature or by leave of the court, for the annulment of the charter of a

corporation on the ground, among others, that it is "exercising a privilege or franchise not conferred upon it by law." The learned counsel for the people urges that, in an action for annulment of a charter pursuant to the provisions of the Code last cited, the court is limited to granting or withholding judgment for the dissolution of the corporation, and that it is manifest that there may be many instances where a corporation should be ousted from exercising a particular franchise or privilege not authorized, when the public interest would not require the dissolution of the corporation; and the original and succeeding statutes from which these provisions were taken, as well as those from which section 1948 was taken, are referred to as tending to sustain this view; but it is claimed that, in an action brought to annul a corporation, the court may grant a judgment of ouster from a special franchise without annulling the corporate existence, and the case of People v. Broadway Railroad Co., 56 Hun, 45–54, 9 N. Y. Supp. 6, is cited as authority for that contention. On the other hand, in article 1, tit. 1, c. 16, of the Code of Civil Procedure, which embraces section 1948, and is entitled "Action against the usurper of an office or franchise," no provision is found for a judgment giving injunctive relief in an action authorized by subdivision 1 of section 1948, herein quoted, and it is somewhat significant that express provisions are contained in that article with respect to the judgment against individuals and for the forfeiture of offices, and that injunctive relief is authorized by section 1955, where the action is based on subdivision 3 or 4 of section 1948. No controlling authority is cited on this point, but decisions dealing with quite similar Code provisions in Wisconsin and California, tending to sustain the theory of the appellant, have been drawn to our attention. See State v. Portage City Water Co., 107 Wis. 441, 83 N. W. 697; People v. Sutter, 117 Cal. 604, 49 Pac. 736. In the view we take of the case, however, we deem it unnecessary to decide whether an action may be maintained by the people against a corporation under the provisions of subdivision 1 of section 1948 of the Code, for assuming, without deciding, that such an action would lie, we are of opinion that the acts of which complaint is here made do not show that the defendant unlawfully holds or exercises a franchise within the fair intent and meaning of those terms as employed in that subdivision. Strictly speaking, the franchise of a corporation consists of the rights, powers, and privileges given by the act of the Legislature incorporating it, or the certificate of incorporation creating its existence pursuant to statutory authority. Municipal grants and consents are sometimes referred to in judicial writings as franchises. Strictly speaking, they are not franchises, but in the nature of the consent of property owners and those having the management and control of property, and are somewhat similar to the consent of a private property owner for the use of his property by a corporation in the fulfillment of its functions. Certain corporations, such as street railways, gas, electric light, and telephone companies, obtain their franchises from the Legislature, including the right to use the public streets, subject generally to the consent of the local authorities having jurisdiction and control over the streets, which impliedly authorizes such local au-

thorities to impose conditions and restrictions in the interest of the public. Ordinarily the routes of steam railroads are, in the main, laid out over private property, and, before entering upon the private property and constructing the railroad, it is necessary that the consent of the owner be obtained either by private negotiations or under the provisions of the law for compulsory consent on the making of due compensation. Such consents, no matter in what form expressed, whether by deed, grant, or otherwise, are not franchises, and we apprehend that it would not be a matter of public concern whether they entered upon possession of private land without the consent of the owner, and no court would hold that an action might be brought by the Attorney General to enjoin a railroad corporation from constructing its railroad over a farm upon the theory that it was exercising a franchise without authority, merely because it had not obtained the consent of the owner.

The so-called "franchises" which the plaintiff claims the defendant is unlawfully exercising are mere grants and consents given by the local authorities, pursuant to authority conferred by the Legislature, to authorize the defendant and the other corporations to whose rights it has succeeded to lay and maintain their gas mains and lateral pipes in certain streets of the city for supplying the public and the occupants of private property with gas, pursuant to authority conferred by the Legislature, subject only to obtaining such consents. The Legislature, in incorporating the companies and authorizing them to use the streets for these purposes, subject to obtaining the consent of the local authorities, decided that the functions which they were to perform warranted the incorporation, and that it was proper and necessary that they should have the right to use the public streets, upon condition, however, that the public should be protected from all risks incident to such use of the streets. The Legislature did not command the local authorities to impose any particular restrictions, or deem that there were any particular restrictions which should be imposed in all instances as part of the franchises. The Legislature itself directly imposed such conditions and restrictions as it deemed requisite for the benefit of the public at large, and it left it to the municipal authorities in some instances to pass merely upon the conditions and restrictions that should be imposed upon the company, in exercising the right granted by its charter, to open and use the streets, and in other instances conferred discretion upon the local authorities with respect to the particular streets to be opened and used, as well as the conditions under which such right should be exercised. While the charters of the corporations exist, and they are authorized to manufacture gas and to supply the public and the inhabitants of the city therewith, it is a matter of less concern to the people at large now than it was originally whether the local authorities, who have once duly consented to the use of the streets by the gas companies in performing their functions, see fit to continue that authority, even though by the terms of the original consents the period for which they were made may have expired. We find no evidence of a public policy indicating that the Legislature intended that the Attorney General should bring an action to enjoin such a corporation from continuing to use gas mains once

duly placed in a public street, upon the ground that the period for which it was intended to authorize the company to maintain the gas pipes has expired and that no new grant has been made by the local authorities. The rule, according to the cited cases, and particularly the case of State v. Portage City Water Co., supra, with respect to the right of a municipality to regulate these matters, is not the same as in this state. That decision went largely upon the theory that the municipal authorities were without remedy for the usurpation of the water company of the right to lay and maintain water mains in particular streets. Here, if the gas company should attempt to lay a main in a street for which it had not obtained the proper consent of the local authorities, it could, and doubtless would, be stopped by the police authorities, acting on the suggestion of the officer whose duty it is to prevent the obstruction of the public streets, and, should it succeed in laying the main again, the local authorities would have the right to remove the same as a nuisance. So, too, having once obtained consent to lay the main, if the local authorities in granting such consent were authorized to place a time limit thereon—which is not clear, and it is unnecessary now to decide—at the expiration of such period the company would no longer have the right to maintain the pipe in the streets, and it might be torn up and removed by the local authorities, or a suit in equity might be maintained by the city to compel its removal by the company. There is, therefore, no necessity in this jurisdiction of giving an interpretation to the word "franchise," as used in an act of the Legislature authorizing the Attorney General to bring an action enjoining the corporation from exercising franchises without authority, which would include these special consents or grants conferred by the local authorities and attaching to the franchises conferred by the Legislature, and together forming the franchises of the corporation. The views here expressed are emphasized by the conceded fact that, even if it should be held that this action would lie, it could be rendered ineffectual without the consent of the Attorney General, or of the Legislature or of the court, by further action of the local authorities at any time in conferring a further consent, if necessary. In one instance, the charter of the corporation which obtained the consent has expired, and the consents are still used by the defendant. The observations already made apply to this. It was competent for the local authorities to authorize the defendant to use these streets and to continue their use under the terms of the original grant, and whether the city authorities shall allow the matter to stand without any formal consent and to rest on an implied consent, or not, is purely a local matter. It may, therefore, well be left to the local authorities of the city of New York to determine what course should be pursued in the premises, and these are the views expressed by this court in Matter of Attorney General, 124 App. Div. 401, 108 N. Y. Supp. 823.

It follows that the judgment should be affirmed, with costs. All concur.