(78 Misc. Rep. 216.)

GROSS v. GAYNOR, Mayor, et al.

(Supreme Court, Special Term, Kings County.   November, 1912.)

MUNICIPAL CORPORATIONS (§ 689*)—USE OF PUBLIC BRIDGE—PERMIT—ACTION
TO ANNUL.

Where the commissioners of bridges, pending the consideration by the
board of estimate of applications by some of defendant railway companies
for the extension of their franchise right over Manhattan Bridge, issued
a permit to all the defendant railway companies for temporary operation
only, on proper terms, such permit being revocable on 30 days' notice, and
being confirmed by resolution of the board of estimate, a complaint by
a taxpayer to annul the permit and resolution, which contains no allega-
tion of fraud, corruption, bad faith, or collusion of any of the defendant
city officials, will be dismissed on motion of all the defendants for judg-
ment on the pleadings.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§
1477, 1478, 1480; Dec. Dig. § 689.*]

Action by Fred L. Gross against William J. Gaynor, Mayor of
the City of New York, and others.   On motion to dismiss the com-
plaint.   Granted.

Latson, Tamblyn & Pickard, of New York City, for plaintiff.

Archibald R. Watson, Corp. Counsel, of New York City, for City
of New York.

James L. Quackenbush, of New York City, for New York Rys. Co.

George D. Yeomans, of Brooklyn, for Brooklyn Heights R. Co.
and Nassau Electric R. Co.

Edward D. Kelly, for Coney Island & B. R. Co.

KELBY, J.   This is a taxpayer's suit to annul a certain permit is-
sued by the commissioner of bridges to the defendant street railroad
companies, including the Brooklyn Heights Railroad Company, New
York Railways Company, and the Third Avenue Railway Company,
and providing for the operation of cars over the Manhattan Bridge,
and also to annul a resolution of the board of estimate which pur-
ported to confirm the said permit.   The defendant railway companies
have demurred to the complaint.   The city officials defendant have
answered, and the sufficiency of the complaint is questioned by mo-
tions made by all the defendants for judgment on the pleadings
dismissing the complaint.   The complaint alleges that the bridge was
constructed by the city at a cost of $30,000,000, and is a public high-
way designed to accommodate pedestrians and vehicular and electric
railway traffic.   It has "two tracks fully installed and equipped,"
but lying idle.   Pending the unhurried consideration by the board of
estimate of applications by some of the defendant railway companies
for the extension of their franchise rights over the bridge the com-
missioner, to meet the unquestionably great public necessity for some
operation meanwhile, issued a permit to all the defendant railway
companies providing for temporary operations only, on terms which
are not claimed to be anything but proper, and making the same rev-
ocable upon 30 days' notice.   Thereafter the board of estimate passed

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a resolution in terms confirming said permit, but requiring that the companies should select a single line of cars to perform such temporary service for all the companies, and providing that "the said permit shall be revocable by the said commissioner of bridges without notice."

The plaintiff contends that under section 242 of the Greater New York Charter (Laws 1901, c. 466, as amended by Laws 1905, c. 629, § 14), which provides that the "exclusive power to grant * * * franchises or rights or make contracts for or involving the occupation or use of any bridge" is in the board of estimate, the permit by the bridge commissioner is a nullity, because it attempts to grant a "right or contract" for the use of the bridge. He furthermore contends that the confirmatory resolution of the board of estimate is illegal because it was passed without observance of the formalities of public hearing and advertising prescribed by section 74 of the charter before a franchise operative over a bridge may be granted. There is no allegation in the complaint of fraud, corruption, bad faith, or collusion on the part of any of the defendant city officials. The recital in the permit as to the necessity for operation is not disputed, nor could it be. The court is not blinded as a judge to what it sees as a man, and that "the rapid transit facilities in the cities of New York and Brooklyn have been for a long time inadequate and unsatisfactory" has been judicially noticed even in the Court of Appeals. Admiral Realty Co. v. City of New York, 206 N. Y. 110, 99 N. E. 241. No injury to any private property is shown nor are there any facts alleged to support the pleader's conclusion that the acts complained of constitute an attempted waste of or any injury to the city property and to its taxpayers. Plaintiff must rest his complaint solely upon the charge that the action of the city officials is illegal.

In his brief plaintiff's counsel contends that it is "unnecessary to inquire whether the action of the bridge commissioner or the action of the board of estimate constituted a waste of municipal funds or a waste of municipal property"; that "their action was *illegal* and the statute under which the taxpayer's action is brought, and which gives to a taxpayer this right of action, entitles the plaintiff to maintain an action to *'restrain an illegal act.'*" The statute referred to is section 51 of the General Municipal Law (Consol. Laws 1909, c. 24). The question of the power or right of the plaintiff to maintain the action on the theory above outlined, it is claimed, has been determined in his favor by the decision rendered by Mr. Justice Van Siclen on an application for a preliminary injunction in this action. Plaintiff says that the court "came to the conclusion that this action could be maintained by the plaintiff." The opinion then delivered does not, I think, bear out this contention. The court recognized that the important question before it was, not whether the taxpayer's action was legally maintainable, but whether a court of equity should interfere by injunction pending the trial of an action involving a doubtful and technically illegal act, where the injury complained of was doubtful and uncertain. To reach that question the court tentatively accepted "for the purposes of the motion" the concession, which the railway

companies were then willing to make, that the action was maintainable, but advised reference to certain cases, as follows: See Tompkins v. Pallas, 47 Misc. Rep. 309, 95 N. Y. Supp. 875, and cases cited; Ghee v. Northern Union Gas Co., 158 N. Y. 510, 53 N. E. 692; contra, if not distinguishable, Gallagher v. Keating, 40 App. Div. 81, 57 N. Y. Supp. 632, 1123; Id., 57 App. Div. 626, 68 N. Y. Supp. 1138, affirmed 171 N. Y. 657, 63 N. E. 1116. This reference was not, I think, to these cases, as authorities supporting the correctness of the proposition conceded, but simply to them as cases in which various views of the question had been considered.

Gallagher v. Keating, supra, is, I think, decisive of the question adversely to the plaintiff. Whatever doubt may have been raised by earlier decisions as to the intent and effect of the taxpayer's suit status was thereby set at rest. It was an action by a taxpayer to annul certain permits issued by the commissioner of highways to connect the elevated road with the Long Island road at Atlantic and Flatbush avenues by passing a structure from the elevated railway across the street into the Long Island lines. Mr. Justice Bartlett, writing for the court, said:

"The legislation concerning taxpayers' actions was not intended to break down the established rule that suits to restrain common nuisances can be maintained only by the public authorities, or by private persons who show that they have suffered, or are likely to suffer, special injury therefrom."

The case is not shown to be distinguishable by any circumstances presented to me. The relief prayed for was the same. The facts were similar in their salient legal aspects; no fraud or bad faith, waste of public property, or injury to private property of the plaintiff was shown, and the acts of issuing the permits, if lawful, had been fully consummated. Nor has there been any change in the General Municipal Law, or in section 1925 of the Code of Civil Procedure, relating to taxpayers' actions, since that case was decided. The suggestion as matter of differentiation that in that case "the railways had undertaken and partly completed their structure" was disposed of when application was made for reargument, and the court said that this did not change the rule.

I regard the permit here involved as far less likely to occasion any possible future inconvenience or legal complications than that there involved, which provided for a structure of a fixed and permanent nature, while the present permit provides for no structure, and only for a temporary use of the city-owned tracks, and is revocable without notice. It is brief in its terms, of simple interpretation, and no tenable claim can arise that some right has become vested under it. It is not exclusive in its terms, nor intended to be exclusive in its effect. The motions for judgment dismissing the complaint are granted, with costs.

Motions granted.