STEWART BROWNE, Plaintiff, *v.* JAMES J. WALKER, as Mayor of the City of New York, and Others, Defendants.

Supreme Court, New York County, August 10, 1927.

**Municipal corporations — city of New York — granting franchise to coach corporation — public hearing held and due inquiry made as to adequate consideration by board of estimate and apportionment pursuant to Greater New York Charter, § 74 — complaint does not state cause of action under General Municipal Law, § 51 — injunction pendente lite denied.**

On an application for an injunction *pendente lite* enjoining the defendants, the mayor of the city of New York and the Equitable Coach Company, Inc., from carrying out the terms of a resolution passed by the board of estimate and apportionment approving a franchise granted to the Equitable Coach Company, Inc., it appears from the evidence that the board of estimate and apportionment before adopting the resolution held a public hearing thereon pursuant to the provisions of section 74 of the Greater New York charter and that said board also made due inquiry as to the adequacy of the consideration to be paid for the franchise as required by said section of the Greater New York charter.

The complaint which fails to allege fraud, collusion or bad faith against the members of the board of estimate and apportionment does not state a cause of action under section 51 of the General Municipal Law.

Under all the circumstances the application for an injunction *pendente lite* is denied.

APPLICATION for an injunction *pendente lite*.

*Solomon Sufrin*, for the plaintiff.

*George P. Nicholson, Corporation Counsel*, for the defendants.

PETERS, J. This is an application for an injunction *pendente lite* enjoining the defendants James J. Walker and the Equitable Coach Company, Inc., and each of them, from taking any step or steps or doing any act or thing towards the carrying out of the terms of the resolution passed by the board of estimate and apportionment on the 28th day of July, 1927, approving the grant of a franchise as petitioned for by the defendant Equitable Coach Company, Inc., and enjoining the defendant James J. Walker, if he had not yet signed any contract pursuant to such resolution, from signing such contract, and if he has already signed it from delivering said contract to the defendant Equitable Coach Company, Inc., or otherwise granting any rights or privileges to said defendant pursuant to such resolution and further enjoining said defendant from maintaining and operating any bus line pursuant to any contract given to it pursuant to the aforesaid resolution. The plaintiff on this application asserts first that the action of the board of estimate and apportionment on the 28th day of July,

1927, approving the granting of the aforesaid franchise was illegal in that said board before adopting the resolution did not hold a public hearing thereon pursuant to the provisions of section 74 of the Greater New York charter (as added by Laws of 1914, chap. 467). That section provides, among other things, with reference to the granting of a franchise, that " Such proposed contract, together with the form of resolution or resolutions for the granting of the same shall, but not until after the hearing upon the petition, be entered on the minutes of the board of estimate and apportionment, and such board shall, not less than twenty-seven days after such entry and before authorizing such contract or adopting any such resolution, hold a public hearing thereon at which citizens shall be entitled to appear and be heard."

The secretary of the board of estimate and apportionment in an affidavit has sworn that the following is a correct transcript of the stenographic minutes of the proceeding of said board on July 28, 1927, in respect to calendar item No. 14:

" No. 14. Hearing on the form of contract for the grant of a franchise to the Equitable Coach Company, Inc., to establish, maintain and operate a bus line for public use in the conveyance and transportation of persons and property upon certain crosstown routes in Borough of Manhattan and upon certain routes in the Boroughs of Brooklyn and Queens, all as more particularly described in said contract.

" The Mayor: The Chair asks unanimous consent to consider out of its regular order No. 14. Is there objection?

" The Clerk read the proposition.

" The Mayor: The Chair moves the adoption of No. 14. Is there objection? If not, call the roll.

" The Clerk: Hearing closed. (The Clerk called the roll.) "

The vote was thereupon taken adopting the resolution. The stenographic minutes of the board show, therefore, that the mayor called for a consideration of the resolution in question; that the proposition was read; that the mayor moved its adoption and asked if there was any objection. So far as the record shows no one objected to the proposition or to the granting of the franchise, whereupon the hearing was closed and the roll called and the vote taken. Upon this record the provisions of the charter above quoted were complied with for there was held a public hearing thereon at which citizens were entitled to appear and be heard. No one asked to be heard. Upon the hearing of this motion the only evidence submitted by the plaintiff to controvert the official record was an affidavit by himself wherein he stated that the mayor

in a low voice uttered the words " No. 14," which was the item number of the Equitable Coach Company's petition for a franchise, and without even a moment's pause and before any one could get on his feet the mayor immediately moved a resolution for the acceptance of the Equitable Coach Company's petition and quickly ordered the clerk to call the roll; that the clerk called the roll of the members present and the mayor hurriedly declared it carried. Counsel for the plaintiff upon this motion admitted that plaintiff suffered an impairment in his hearing and that fact is borne out by a letter to the mayor dated January 7, 1926, attached to the answering affidavits. Here is an admission by the plaintiff that in spite of his impaired hearing he heard the mayor, in what appeared to him to be a low tone of voice, call the proposed resolution in question, and also that he heard the mayor move the adoption of the resolution. Yet hearing the resolution called he did not object, protest or ask to be heard. Plaintiff was given an opportunity to submit additional affidavits and he has submitted affidavits by himself, Charles W. Eidt and T. D. Zukerman. Plaintiff in his additional affidavit *elaborates* what he heard the mayor say as follows: " Hearing closed. The Chair moves the adoption; the Clerk will call the roll." The affidavit of Eidt states that the said item No. 14 was on the calendar for a hearing but no hearing was had because when No. 14 was called, the mayor requested the clerk to call the roll and declared the motion adopted before any objection could be offered. The affidavit of Zukerman states that he heard the mayor say, " I move No. 14," and that before the affiant could turn the page to see what No. 14 was, the mayor said to the clerk, " Call the roll." The affidavit further states that the mayor did not ask whether any one desired to be heard.

The affidavit of the mayor supports the official record of the hearing in every respect and states that the clerk read the item as follows:

" Hearing on the form of contract for a grant of franchise to the Equitable Coach Company, Inc., to establish, maintain and operate a bus line for public use in the conveyance and transportation of persons and property upon certain crosstown routes in the Borough of Manhattan and upon certain routes in the Boroughs of Brooklyn and Queens, as is more particularly described in said contract."

John H. Delaney, chairman of the board of transportation for the city of New York, who was present at the time, in an affidavit denies, as does the mayor in his affidavit, that the mayor spoke in a low tone of voice during the proceeding, and states that the mayor

requested consideration of the item in a tone so that all might hear; that no one appeared to talk on the subject of item No. 14 and the mayor thereupon requested a roll call.

All the affidavits agree that the proposed resolution was called up for consideration by the mayor publicly and there is no affidavit before the court that any one present in the chamber protested or objected to this particular resolution or asked to be heard thereon. There is not even an affidavit from any one to the effect that he desired to be heard on the resolution and was prevented by the mayor or any one from being heard. Even the plaintiff in his affidavit does not claim that he asked to be heard, although he had heard the resolution called for consideration. The official record shows that the mayor asked if there was any objection. The affidavit of Eidt does not deny this nor does the affidavit of Zukerman. Zukerman merely states: " The mayor did not ask whether any one desired to be heard." Public officials are presumed to have done their duty; their actions can only be declared to be illegal upon convincing evidence. The record shows that the mayor called for objections and the record does not show that any objection was made. The record is supported by the affidavits of the mayor and Commissioner Delaney. Each of the affidavits submitted by the plaintiff admits that the affiant heard the call of the proposed resolution and does not show that the affiant asked to be heard thereon. The only question before the court is one of *fact* as to whether the mayor asked if any one had objections to the proposed resolution, thus affording any citizen present an opportunity to be heard. Upon the record before me, I find that the proof submitted by the plaintiff is not sufficient to overcome the presumption that the public officials concerned performed their duty and held the hearing provided for by law. The stenographer's record of the proceedings supports that presumption. The plaintiff has not, therefore, shown that the action of the board of estimate and apportionment in adopting the resolution granting the franchise in question was illegal.

The next ground upon which the injunction is sought is that the terms offered to the city of New York and its citizens and taxpayers by other companies for the franchises in question were more favorable than the terms incorporated in the franchises granted to the defendant Equitable Coach Company, Inc. The provision of law to be considered by the court in this connection is contained in section 74 of the Greater New York charter and is as follows:

" The board of estimate and apportionment shall make inquiry as to the money value of the franchise or right proposed to be

granted and the adequacy of the compensation proposed to be paid' therefor, and shall embody the result of such inquiry in a form of contract, with all the terms and conditions, including the provisions as to rates, fares and charges."

Under this provision it is the duty of the board of estimate and apportionment to inquire as to *the adequacy of the compensation proposed to be paid* for the franchise and to embody the result of such inquiry in a form of contract. This the board of estimate and apportionment has done. The result is that the minimum compensation that the Equitable Coach Company, Inc., must pay to the city of New York each year for the franchise in the boroughs of Manhattan, Brooklyn and Queens is the sum of $400,000. The board of estimate and apportionment has, therefore, performed the statutory duty imposed upon it and has determined the adequacy of the compensation to be paid for the franchises.

The plaintiff attempts to sustain this action under the provisions of section 51 of the General Municipal Law, which provides for the institution of taxpayers' suits to prevent an illegal official act on the part of public officials or to prevent waste or injury to property, funds or estate of a municipality. The power of the court to interfere with acts of public officials under this section or under statutes which preceded it is extremely limited. In *Talcott* v. *City of Buffalo* (125 N. Y. 280) the Court of Appeals said (p. 285): " The question for our determination in this case, therefore, is whether a taxpayer can maintain an action to restrain the governing body in a city from official action, within its power and discretion and without any charge or allegation of fraud, collusion, corruption or bad faith. * * * The terms ' waste ' and ' injury'' used in this statute comprehended only illegal, wrongful or dishonest official acts, and were not intended to subject the official action of boards, officers or municipal bodies acting within the limits of their jurisdiction and discretion, but which some taxpayer might conceive to be unwise, improvident or based on errors of judgment, to the supervision of the judicial tribunals. It is believed that no action was ever maintained under this statute with the sanction of this court, without some proof or allegation that the official act or proceeding complained of was without power or was tainted by corruption or fraud."

Nowhere in the complaint is fraud, collusion or bad faith charged against the members of the board of estimate and apportionment. The only allegation of the complaint is that the terms offered by other petitioning companies were more favorable to the city and its citizens and taxpayers. In fact, upon the oral argument, counsel for the plaintiff expressly stated that no fraud was charged

aga:nst the mayor. The plaintiff, therefore, in this connection has failed to state a cause of action under the authority just cited. Even if charges of fraud, collusion or bad faith had been made in the complaint, such charges would not be sustained by the facts before me because, as before stated, the minimum guaranty provided for by the franchises granted amounted to $400,000 per year, whereas the minimum guaranty to the city under the franchises proposed by the three unsuccessful companies covering practically the same routes was the sum of $390,000 or $10,000 less than the minimum guaranty provided for by the franchises granted. The fact that the Manhattan Service Coach Company, Inc., the unsuccessful petitioner for franchises in the borough of Manhattan, offered to pay fifty per cent of any net profit after allowing for eight per cent on capital invested, is no evidence of fraud or bad faith, because there has been no evidence submitted to the court that there would be any net profits over and above eight per cent on the capital invested under the fare provided for by the franchise. Returns to the city from such provisions in franchises granted by it have in the past proven to be illusory. The board of estimate and apportionment has performed its duty after an investigation shown by the evidence to have lasted some three years, during which time there have been several hearings on the various petitions for the franchises in question. The board has, acting upon its judgment, determined the adequacy of the compensation to be paid for the franchises in question, has embodied in the form of the contract such compensation and the terms and conditions including the provisions as to rates, fares and charges. These latter, including the question of transfers, have to do with the users of the buses and do not have to do with the compensation to be paid to the city of New York. The board of estimate and apportionment acted, among other things, upon the reports of the board of transportation of the city, which investigated the questions of the fare to be charged, the service to be rendered, the transfer facilities, the financial ability of the companies and the compensation to be paid to the city. The board of estimate and apportionment has exercised *its* discretion, and, acting in a legislative capacity, has granted these franchises. There is no charge of fraud or bad faith or collusion on the part of the members of said board contained in the complaint therein, and there is no evidence before the court of fraud or bad faith or collusion. The court, therefore, is without power to interfere in any way with the granting of these franchises.

The application for the injunction sought is, therefore, denied, with ten dollars costs.