JASON METH, Plaintiff, *v.* CITY OF NEW YORK and Others, Defendants.

Supreme Court, New York County, March 8, 1929.

*G. D. Zahm*, for the plaintiff.

*George P. Nicholson, Corporation Counsel* [*William E. C. Mayer, Assistant Corporation Counsel*, of counsel], for city of New York.

SHERMAN, J. Plaintiff sues as a taxpayer, and asks injunctive relief against the city of New York, the mayor, the comptroller, and others, constituting the board of estimate and apportionment, individually and as members of that board, and the Equitable Coach Company. Five separate causes of action are set out in the complaint. Defendants' motions test the validity of each cause of action. They may be respectively outlined as, first, that the franchise to operate bus lines granted by the board of estimate and apportionment to the Equitable Coach Company on July 28, 1927, as well as the contract thereafter executed between the city of New York and the coach company on August 10, 1927, are invalid because the franchise did not conform to the petition which had been filed, and the streets covered by the franchise differed from those which were set forth in the petition upon which the board initially acted. The second cause of action rests upon the claim that the resolution awarding the franchise failed to receive the votes of members of the board of estimate and apportionment to the extent required by statute, in that, though the requisite number of votes were recorded, they were cast, not by the comptroller and the borough presidents, but by the deputy comptroller in lieu of the comptroller and commissioners of public works in the place of absentee borough presidents. The third cause of action declares that the board of estimate and apportionment failed to make a proper inquiry as to the value of the franchise granted and as to the adequacy of the compensation proposed to be paid thereunder. The fourth cause of action proceeds upon the claim that there was no public hearing, as required by law, before the board of estimate and apportionment when the franchise was granted. The fifth cause of action asserts that recent petitions have been filed with the board of estimate and apportionment seeking changes in the routes and otherwise, and that the granting of any amendment or modification of the original franchise would be illegal, notwithstanding the recent enactment of chapter 717 of the Laws of 1928 (adding sections 68–69-d to Transportation Corporations Law). Upon these motions the court cannot look beyond the allegations of the complaint. It will be observed that the complaint is devoid of any charge of corruption or bad faith on the part of any of the defendants, and the honesty and sincerity of purpose of city officials are in nowise assailed. The relief sought is, not that the franchise to and the contract with the Equitable Coach Company be set aside,

but that the members of the board of estimate and the officials of the city be restrained from carrying them out, and that, furthermore, the board of estimate and apportionment be enjoined from proceeding to modify the routes and .contract under chapter 717 of the Laws of 1928.

At the very threshold of this motion,᾿ in so far as the first four causes of action are concerned, lies the objection that the plaintiff may not, under the guise of restraining the officials of the city from carrying out the grant and contract, virtually set aside, by indirection, the franchise hitherto granted and the contract heretofore made for the operation of the bus lines.   Apparently the plaintiff recognizes that a franchise to operate a bus line upon the streets of a municipality within this State may not be set aside upon the application of an individual taxpayer.   The power to attack such a grant resides in the State acting through the Attorney-General. Section 1208 of the Civil Practice Act specifically authorizes the Attorney-General to institute such an action in a proper case.   The franchise to operate upon the streets is a grant from the sovereign power of the State, acting through a municipality, and whether or not such a franchise should be canceled can be determined only in an action brought in the courts of this State by the State to obtain that relief.   (*City of New York* v. *Bryan*, 196 N. Y. 158; *People* v. *Bleecker St. & Fulton Ferry R. R. Co.*, 140 App. Div. 611; affd., 201 N. Y. 594; *Beekman* v. *Third Avenue R. R. Co.*, 153 id. 144.)   As stated by Mr. Justice LAZANSKY in *Marjohn Realty Co.* v. *City of Long Beach* (122 Misc. 763, 767; affd., 211 App. Div. 805):   " The rights of a taxpayer cannot be greater than those of the city.   If the city cannot maintain an action against the railway, the citizen cannot.   The city cannot maintain an action to determine the status of a franchise.   (*City of N. Y.* v. *Bryan*, 196 N. Y. 158.) " In *Matter of Clements* (191 App. Div. 279), Mr. Justice JAYCOX held: " I think it is the right and duty of the Attorney-General alone to bring an action against a person who usurps, intrudes into, or unlawfully holds or exercises within the State a franchise." It should not be forgotten that the franchise and the contract have the attributes of a property right.   (*People* v. *O'Brien*, 111 N. Y. 1.)   Moreover, no facts are alleged in these four causes of action upon which a judgment could be based enjoining, at the instance of plaintiff, the municipal authorities as individuals from carrying out the terms of the franchise and contract.   The municipal officials would be censurable if they did not undertake to perform a contractual obligation binding upon the city.

The fifth cause of action differs from the preceding causes of action.   It does not seek to enjoin the performance of an executed

contract, but is expressive of the apprehension that the board of estimate and apportionment may under chapter 717 of the Laws of 1928 take some action which is unwarranted by the laws of this State. That enactment authorizes every city in the State, in addition to such powers as it may have had relating to the granting of franchises for the operation of stage, omnibus or motor vehicle lines, to grant a "terminable permit" to operate stage, omnibus or motor vehicle lines within such city and to agree upon and contract for terms and conditions in connection therewith. Broad powers are conferred by this act. Every city is given the power to amend any existing grant, license or permit, or any of the terms, provisions or conditions thereof. The only limitation appears to be that such modification must be accepted by the grantee of the franchise. But how is it even arguable that an individual taxpayer may, in advance of the action of the board of estimate and apportionment in a complaint which is devoid of facts tending to show that the members of that board are actuated by any except the most honorable impulses, obtain an injunctive order from a court restraining the duly elected officials of New York city from exercising a power specifically conferred upon them by the Legislature? A mere statement of the query carries the answer. The responsibility rests squarely on the city officials. Except where the contemplated acts are clearly shown to be without warrant of law, courts may not interfere with the exercise of their powers. So long as they act within the powers conferred by statute, the city authorities are immune from interference by the courts. Furthermore, the plaintiff does not assert that he, individually, will be specially damaged by any past or contemplated acts of the board of estimate and apportionment. His interest is no different from that of any other citizen. The law confides in the public authorities the power to provide for proper transportation facilities. Indeed, it might well be held that the interests of the people of the city require that adequate transportation lines be constructed with reasonable dispatch. The necessities of the community as a whole quite override the individual position taken by the plaintiff. (*Western New York Water Co.* v. *City of Buffalo*, 242 N. Y. 202; *Altschul* v. *Ludwig*, 216 id. 459.) A critical examination of the four causes of action, which attack the validity of the original franchise and contract, reveals that they contain virtually no statement of fact other than such as are shown by the public records of New York city.

The main proposition asserted by the plaintiff, with apparent confidence, upon the argument, arises in connection with the second cause of action; there it is claimed that the deputy comptroller and the commissioners of public works acted in place of the absent comp-

troller and borough presidents respectively at the time when the franchise was granted, and that the franchise granted in their absence was virtually no franchise at all, because it was voted by those without power to vote. The elected officials alone and not their substitutes, it is urged, may vote to authorize the grant and make the contract. Since the argument of this motion that question has been decided by the Appellate Division of this department adversely to the plaintiff's contention (*Matter of Richmond Railways, Inc., v. Gilchrist*, 225 App. Div. 371, opinion by Mr. Justice O'MALLEY, March 1, 1929), where it was held under similar circumstances that votes cast in place of the borough presidents by the commissioners of public works and in lieu of the comptroller by the deputy comptroller when bus franchises in Richmond county were awarded to the Tompkins Bus Company, were legally cast, and that, counting such votes, the requisite number of votes had been given in favor of the resolution awarding the franchise, whereas, if such votes had been excluded, the requisite number would not have been obtained. That decision disposes of plaintiff's main contention here.

The foregoing views require the granting of the motions on behalf of all defendants to dismiss the complaint.