PAUL BLANSHARD, Plaintiff, *v.* THE CITY OF NEW YORK and Others, Defendants.

Supreme Court, New York County, October 14, 1931.

*Waldman & Lieberman* [*Louis Waldman* of counsel], for the plaintiff.

*Arthur J. W. Hilly* [*William E. C. Mayer* of counsel], for the city of New York and the board of estimate and apportionment of the city of New York, defendants.

*George D. Yeomans* [*Clarence J. Shearn* of counsel], for the Brooklyn Bus Corporation, defendant.

SHIENTAG, J. This is a taxpayer's action to restrain the defendants from proceeding and operating under a bus franchise, alleged to have been granted illegally, fraudulently and in waste of the public funds and domain. It also seeks to annul and declare void the resolution of the board of estimate and apportionment of the city of New York granting the franchise to the defendant Brooklyn Bus Corporation, as well as the contract embodying the terms thereof, entered into between the defendants.

Although the complaint is silent on the subject, the parties have assumed, and for the purposes of this motion I shall take judicial notice of the fact, that before the action was instituted the franchise here attacked was completed by the granting of a certificate of convenience and necessity by the Transit Commission of the State of New York, and that the defendant Brooklyn Bus Corporation actually commenced the operation of buses on a number of routes designated in the franchise contract.

The pending motion is addressed to the sufficiency of the complaint. The defendants contend that the complaint is insufficient in law for two reasons: *First*, that a taxpayer, under the statute, may not maintain an action based upon illegality, waste or fraud,

to annul a franchise completed and acted upon, or to restrain operation and proceedings thereunder; that the only one empowered to bring such a suit is the Attorney-General, acting on behalf of the People of the State.  *Second,* that, in any event, the complaint fails to set forth facts sufficient to constitute a taxpayer's action.

At common law a taxpayer could not maintain a suit against a public officer to restrain an illegal act, or the waste of public funds, unless the violation of the public right subjected the taxpayer to some special or particular damage not suffered by the rest of the community.  As a practical matter, therefore, a taxpayer's action could not be brought at common law.  This unsatisfactory condition, aggravated by the scandals arising from illegal and wrongful acts committed by municipal officers and others, dealing with municipal funds and property, led to the enactment of the first taxpayer's statute in this State (Laws of 1872, chap. 161).

With various amendments extending its scope, the taxpayer's remedial statute is now embodied, in substance, in section 51 of the General Municipal Law.  The history of the legislation and the reasons which led to its enactment are fully discussed in *Talcott* v. *City of Buffalo* (125 N. Y. 280, 285); *Rogers* v. *O'Brien* (153 id. 357, 361), and *Altschul* v. *Ludwig* (216 id. 459, 464).

The defendants, in their briefs, place much reliance upon the fact that the plaintiff shows " no special or particular damage to himself."  This argument loses sight of the whole purpose of the statutory provisions for the maintenance of a taxpayer's suit. We have long abandoned in this State the requirement that one who sues to protect public property against official waste must prove that he seeks, by his suit, to pursue selfish, pecuniary ends.

The requirement of special damage, while a traditional limitation upon the right of private individuals to enjoin or abate a public nuisance, is wholly irrelevant to the statutory right which, since 1872, has been given to taxpayers in this State to restrain illegal, fraudulent or wasteful official action.

Section 51 of the General Municipal Law empowers a taxpayer, under certain specified conditions, to institute a suit against municipal officers, (a) to prevent any illegal official act; (b) to prevent waste or injury to the property, funds or estate of a municipal corporation; (c) to restore and make good any property, funds or estate of a municipality.

It is true that not every illegal official act of a municipal officer falls within the scope of the taxpayer's statute.  " It was not the intention of the statute that a taxpayer shall be allowed to intervene and bring to the decision of the courts every act of a municipal

officer which may be claimed to be illegal, although concededly it is entirely innocuous." (*Western N. Y. Water Co.* v. *City of Buffalo,* 242 N. Y. 202, 207.) To be entitled to relief under the taxpayer's statute, when waste is not involved, " it must appear that in addition to being an illegal official act the threatened act is such as to imperil the public interests or calculated to work public injury or produce some public mischief." (*Altschul* v. *Ludwig, supra,* 467.) " It must be in a real sense a menace to the *public* welfare." (*Southern Leasing Co.* v. *Ludwig,* 217 N. Y. 100, 104.) This does not necessarily require that the threatened public harm be measurable in dollars and cents. " There may well be public interests which a taxpayer is interested to conserve, which relate to the general public welfare and which ought to be protected." (*Brill* v. *Miller,* 140 App. Div. 602, 607; *Bareham* v. *City of Rochester,* 221 id. 36; modfd. and affd., 246 N. Y. 140; *Fletcher* v. *Hylan,* 211 N. Y. Supp. 727.) The complaint alleges official illegality of this type. In any event, it also charges official waste of the property and funds of the city, thus bringing the complaint on this point squarely within the statute. Moreover, this complaint charges fraud and bad faith, elements wholly lacking in *Gallagher* v. *Keating* (40 App. Div. 81) and *Cross* v. *Gaynor* (78 Misc. 216).

Defendants further contend that the acts against which the present suit is directed are wholly past, and beyond the power of this court to rectify.

The statute provides not only for prevention but for reparation; it contemplates action not only to frustrate, but to undo. Under it, the performance as well as the entry into illegal or wasteful contracts may be enjoined. (McQuillin Mun. Corp. [2d ed.] § 2758.) To hold otherwise would be to give to secrecy and haste total immunity from the sanctions against official misconduct created by the taxpayer's statute. " The right does not depend upon the speed with which the law is broken." (*Cawker* v. *Milwaukee,* 133 Wis. 35, 38.)

Ordinarily, the remedies sought under the statute have been preventive, but from an early date it has been held that as an incident to the preventive and prospective relief, a retrospective remedy may be afforded. (*People* v. *Ingersoll,* 58 N. Y. 1, 14.)

As the taxpayer's action developed in this State, this principle became firmly imbedded in the decisions.

In *Wenk* v. *City of New York* (171 N. Y. 607) the court, in sustaining the sufficiency of a complaint in a taxpayer's suit to annul certain leases of public property, pointed out that " the illegal act sought to be prevented in this case is the collection by the ' acting ' official of the municipality, of rents under leases which the court is

asked to annul because they are alleged to be void " (p. 615). (See, also, *Hendrickson* v. *City of New York,* 160 N. Y. 144; *Jackson* v. *Norris,* 72 Ill. 364; *Leffingwell* v. *Scutt,* 221 App. Div. 462; *Burns* v. *City of Watertown,* 126 Misc. 140; *Tompkins* v. *Pallas,* 47 id. 309.)

If we eliminate for the moment the question of a franchise, which is here involved, and which will be discussed later, the *Wenk* case is on all fours with the case at bar. The plaintiff is not engaged in a futile rebellion against what is already done. He seeks to enjoin the performance of a contract which on its face purports to affect the public funds, property and domain for ten years to come, and as in the *Wenk* case the court is asked to annul the contract already executed, because it is alleged to be void. The plaintiff seeks to enjoin future acts which would be illegal, if the contract under which they are to be performed was not lawfully entered into.

Does the fact that a franchise is here involved change in any way the rules so clearly laid down by the authorities when dealing with other contracts entered into by municipalities or with their property, funds and estate?

Fundamentally there is little difference between a franchise and any other contract. Subject to the very limited right of local self-government, as it existed at the time of the adoption of the State Constitution, and except as restrained by various constitutional provisions, the control of the State over the government, affairs and property of cities generally is just as broad as its control over franchises, operative within the territorial limits of a municipal corporation. "All franchises or privileges known by that term proceed from the state in the exercise of its sovereign powers * * *. Sometimes the franchise is conferred directly by the state through some grant or legislative enactment, but more generally the sovereign delegates its powers to municipal or local authorities." (*Wilcox* v. *McClellan,* 185 N. Y. 9, 16.) It is often said that in granting a franchise pursuant to the power delegated to it by the State, the municipality is acting as agent of the State and is discharging a State function. There is, however, no real agency. Certainly, in granting its consent to the operation of a railway on its public streets, and in imposing terms and conditions therefor, a municipality is acting for a local purpose and not in discharge of any State function.

It is significant that the right of a taxpayer to sue in a proper case to restrain the granting of a franchise by a municipality pursuant to powers delegated to it by the State, has never been successfully challenged on the ground that in so doing the municipal

authorities were acting as agents of the State, and that only the State could sue to prevent the issuance of a franchise in violation of law. There are many cases in the reports in which such taxpayers' suits have been entertained, some decided in favor of the taxpayer, others against him, but for different reasons. Since 1872 it has always been assumed that such suits came within the taxpayer's statute; in fact the statute would have been a mockery had the issuance of franchises been removed from the sphere of its operation. (*Adamson* v. *Union Ry. Co.*, 74 Hun, 3; *Gusthal* v. *Strong*, 23 App. Div. 315; *McCutcheon* v. *Terminal Station Commission*, 217 N. Y. 127, 147, 148.)

Is the situation changed because the franchise whose validity is challenged on the ground of illegality, fraud and waste, has actually been granted and the contract embodying its terms executed by the parties?

The State Constitution (Art. 3, § 18), by requiring the consent of the local authorities to the granting of a franchise involving the use of the public streets for street railway purposes, " recognizes that oue municipalities are *pro tanto* independent of legislative control, exercising some.fragment of power, otherwise legislative in character, which has been thus irrevocably transferred by the fundamental law from the Legislature to the locality. The grant by the municipality of authority to use the streets is not a mere privilege or gratuity." (*Matter of Quinby* v. *P. S. Commission*, 223 N. Y. 244, 262.) (See, also, *N. Y. Electric Lines* v. *Empire City Subway*, 235 U. S. 179, 192, 193.) The Legislature may, of course, by statute, regulate the mode and manner in which such consent shall be given. Whether or not the consent of a municipality is required, the Legislature may delegate to the former the power to grant franchises, and prescribe the terms and conditions under which such power shall be exercised. That power given to a municipality, whether it be by virtue of constitutional mandate or by legislative enactment, is to be exercised as a municipal function, as a trust for the benefit of its inhabitants.

" It is immaterial what particular name is given to this thing which is thus granted. Whether it be a thing corporeal or incorporeal or whatever be its correct legal designation it is a species of property of some kind. It is a property held by the city and is subject to the same trusts and duties as its other property." (*Milhau* v. *Sharp*, 15 Barb. 193 [1853], allowing injunction to taxpayer, where franchise had already been granted; disapproved in *Doolittle* v. *Broome Co.*, 18 N. Y. 155 [1858], on the ground that a taxpayer could not maintain the action — there being no statutory authorization at the time.)

Let us see how far the Legislature has gone in turning over to the local authorities the control over the issuance of a franchise such as is here involved. It has prescribed certain procedure; it has fixed certain limitations; it has required a certificate of convenience and necessity by a State agency as a condition of the franchise becoming operative, and it has left the operation of the franchise subject to a limited regulatory supervision by a State commission. We may properly characterize State control as the shell of the franchise and municipal action as its kernel. The application for the franchise is made to the city; the investigations and hearings are held by the city; the contract embodying the terms under which the franchise is granted is drawn by the city and is entered into and executed by it; the franchise is granted in the name of the city; the income derived from the franchise grant is the property of the city; and the city under the terms of its contract and subject to the general supervisory power of the State, before mentioned, has full control over the operation of the franchise, with power to cancel the same in the event of a breach in any of its terms and conditions. What greater recognition could there be of the fact that a franchise, of the character we are considering, is primarily a matter of local concern?

Conceding that in contemplation of law the franchise is derived from the State, a realistic analysis of what actually occurs demonstrates that it is the action of the city, as a city, which operates to bring the franchise into existence. It is this action of the city, through its municipal officers, which the taxpayer is here attacking as illegal, wasteful and fraudulent. He is not questioning anything which the State or a State agency has done. Under such circumstances, it seems clear that whatever concurrent rights the State may have, a municipal taxpayer is not deprived of his remedy.

The right of the plaintiff to maintain this action is challenged, finally, because of section 1208 of the Civil Practice Act, which empowers the Attorney-General to commence an action " against a person who usurps, intrudes into or unlawfully holds or exercises within the state a franchise or a public office, civil or military, or an office in a domestic corporation." It is unnecessary to decide whether this power, as construed in *People* v. *Equity Gas Light Co.* (141 N. Y. 232) and *People* v. *Consolidated Gas Co.* (130 App. Div. 626), covers the situation presented in the instant case. For if it does, it remains a concurrent and not an exclusive power. (Cf. Spellman Corporate Director, §§ 91, 92 and cases cited.)

" The purpose of the statutes authorizing a taxpayer's action is not to confer upon the taxpayer the power to bring actions which the public authorities have no power to bring, but these statutes are

designed to confer upon the taxpayer the right to bring such an action in the cases specified in the statute which are cases where the relief sought could be obtained by appropriate proceedings on the part of public officers. * * * An action may be maintained by a taxpayer to restrain an illegal official act which is of such a character that it could be restrained upon the application of the attorney-general or some body or officer acting on behalf of the public." (*Altschul* v. *Ludwig*, 216 N. Y. 459, 467; and see *Rogers* v. *O'Brien*, 153 id. 357, 362.) Under section 1208 of the Civil Practice Act, the power of the Attorney-General to institute suit against one who unlawfully holds or exercises a franchise is within his discretion — a discretion which is not reviewable by the courts. (*People ex rel. Demarest* v. *Fairchild*, 67 N. Y. 334.) The Attorney-General may be a proper party; he may be brought in on application of either side, or on his own motion; he may even be a necessary party; but I see no basis for holding that in a situation of this kind, the Attorney-General is the only proper party to bring the action, that his unreviewable discretion to institute an action is the only source of legal or equitable relief, under the circumstances of this case.

I am not unmindful of dicta which point to a different conclusion. In this connection, it may be well to bear in mind the observation of Lord SUMNER, that " no ' kindly light ' is more of a will-o'-the-wisp than an obiter dictum sometimes contrives to be." (*Sorrell* v. *Smith*, [1925] A. C. 700, 743.)

The proposition that only the Attorney-General can move to set aside a franchise, unlawfully granted by a municipality or its officer, is thought by the defendants to be sustained by the following cases: *City of New York* v. *Bryan* (196 N. Y. 158); *People* v. *Bleecker St., etc., R. R. Co*. (140 App. Div. 611; affd., 201 N. Y. 594); *Matter of Clements* (191 App. Div. 279); *Marjohn Realty Co.* v. *City of Long Beach* (122 Misc. 763; affd., 211 App. Div. 805), and *Meth* v. *City of New York* (142 Misc. 203).

The first three of these cases are not taxpayers' actions, and deal with the construction of corporate charters and admittedly valid franchises issued thereunder. In the instant case the question is whether the municipality ever granted any valid franchise. The argument that the Attorney-General is the only proper party plaintiff, because the Legislature is the original source of the franchise rights involved, really begs the whole question at issue, namely: Has the Brooklyn Bus Corporation any franchise rights at all? What the plaintiff is here attacking is alleged illegality, waste and fraud on the part of the municipal authorities; he is not questioning any action of the State.

*Meth* v. *City of New York* (*supra*) contains a dictum in support of the defendants' contention, and while entitled to great respect, is not decisive of the instant case. No fraudulent or illegal acts were specifically charged in the complaint there under consideration.

I recognize that *Marjohn Realty Co.* v. *City of Long Beach* (*supra*), decided in the Appellate Division, Second Department, supports the contention of the defendants. I am unable to reconcile that case with the decisions in *Hendrickson* v. *City of New York*, *Wenk* v. *City of New York*, and *Altschul* v. *Ludwig* (*supra*).

No case has been submitted to me, nor have I found any, in which the Court of Appeals, or the Appellate Division of this Department, has disallowed a taxpayer's suit under circumstances such as are here presented.

I hold, therefore, that except as to the question of delay and laches, a most important consideration but one not presented on this motion, a taxpayer has the same right to sue to restrain action under a franchise granted by a municipal body and to have the franchise canceled on the ground of illegality, waste or fraud, as he has to sue to restrain the granting of such a franchise.

Cases in other jurisdictions support this principle. (*Merchants Police & Dist. Telegraph Co.* v. *Citizens Telephone Co.*, 123 Ky. 90; *State ex rel. Morgan's La. & Tex. R. R. & Steamship Co.* v. *Judge*, 52 La. Ann. 1065; *Lewis* v. *Freeholders of Cumberland*, 56 N. J. L. 416; *Cincinnati Street Railroad Co.* v. *Smith*, 29 Ohio St. 291.)

I am strengthened in this conclusion by the conviction that the taxpayer's statute should be liberally construed by the courts. " The language of the act is very broad; it is a remedial statute, to be liberally construed for the purpose of effectuating the object of its enactment." (*Hicks* v. *Eggleston*, 105 App. Div. 73, 75; and see *Queens Co. Water Co.* v. *Monroe*, 83 id. 105, 107.) The theory of the statute is that the taxpayer, as the ultimate bearer of the burdens of the municipality, shall have a remedy against illegal official acts which tend to waste the property of the public.

" The history of legislation on this subject shows how progressive have been the enactments. Instead of an abridgement of its scope or a relaxation of its rigor, the Legislature has extended its sweep and augumented its severity and that is a sufficient admonition against any circumscription of its operation." (*Adamson* v. *Union R. R. Co.*, *supra*, 9.)

Having reached the conclusion that the plaintiff as taxpayer has the right to bring an action of this character, the next question

is whether the complaint states facts sufficient to constitute a cause of action under section 51 of the General Municipal Law.

It is elementary that on a motion to dismiss a complaint, the pleading attacked is to be most liberally construed. The court, for the purposes of the motion, is bound to accept as true not only the facts directly alleged, but those which by fair and reasonable intendment may be implied from the direct allegations. (*Wenk* v. *City of New York, supra*, 613.) It is sufficient that the requisite allegations can be fairly gathered from all the averments of the complaint. (*Zabriskie* v. *Smith*, 13 N. Y. 322, 330; and see *Kavanaugh* v. *Kavanaugh Knitting Co.*, 226 id. 185, 198.)

It was never intended, by a taxpayer's action, to subject to the supervision of judicial tribunals the official action of boards, officers or municipal bodies, acting within the limit of their jurisdiction, but " which some taxpayer might conceive to be unwise, improvident or based upon errors of judgment." (*Talcott* v. *City of Buffalo*, 125 N. Y. 280, 286; *Admiral Realty Co.* v. *City of New York*, 206 id. 110, 125.) It would be neither the duty nor the right of the court to substitute its judgment for that of the municipal authorities. (*McCutcheon* v. *Terminal Station*, 217 N. Y. 127, 137.)

A taxpayer's action may be brought only " to frustrate or undo acts of officials which are either beyond their power, or fraudulent breaches of their official trust." (*Knowles* v. *City of New York*, 37 Misc. 195, 202; affd., 74 App. Div. 632.) The city and its inhabitants must accept responsibility for an act of their duly constituted officials, " so long as such action is within the authority of the statute and characterized by good faith and free from fraud and corruption." (*McCutcheon* v. *Terminal Station, supra*, 138.)

Of course, the bare allegation that the conduct of a municipal board was fraudulent or illegal does not state an issuable fact. It is a conclusion, entirely proper in summing up an array of facts which support the general charge, but independent of any fact to uphold it, it is of no weight. (*Barhite* v. *Home Telephone Co.*, 50 App. Div. 25, 30.)

The principal allegations of the complaint are (1) that the public hearings required by section 74 of the Greater New York Charter were not in fact held; (2) that the charter requirement that the board of estimate and apportionment inquire into the money value of the proposed franchise and the adequacy of the compensation therefor was not complied with; (3) that the required findings of the board of estimate and apportionment with respect to the money value of the franchise were not embodied in the form of contract published by the board; (4) that the maximum financial return possible to the city was not obtained; (5) that other offers were

not considered; and (6) that the board of estimate and apportionment acted throughout in bad faith and in collusion with the stockholders of the Brooklyn Manhattan Transit Corporation, the Brooklyn and Queens Transit Corporation and the defendant Brooklyn Bus Corporation.

Of these allegations I shall for the purposes of this motion disregard the third, in the light of the decision of this court in *Browne* v. *Walker* (131 Misc. 736) and because of the weight which courts give to the construction of statutory requirements by the officers whose duty it is to follow them. (*Bullock* v. *Cooley*, 225 N. Y. 566.) I shall assume also that general allegations of bad faith and fraud are insufficient, except as they are supported by more definite averments.

The remaining factual allegations of the complaint are sufficient in my judgment to charge illegality, injury and waste. In determining a motion of this character the court cannot look beyond the pleadings; it cannot even consider affidavits submitted; it passes solely on the sufficiency of the complaint, the allegations of which must be accepted as true. The court does not and cannot assume to forecast what may develop upon a trial. The factual allegations of the complaint are sufficient, upon their face, to constitute a cause of action against the defendant. Whether the charges made can be established or proven can be determined only at the trial. The court does not here determine that the taxpayer is entitled to succeed; it simply decides that he is entitled to maintain his suit. In a somewhat similar situation the Court of Appeals said: " It remains to be emphasized that in the discussion of this case we are dealing only with the question of pleading. The hearing of the evidence may invest the case with an entirely different aspect than it now bears, under a complaint which we are bound to take as true." (*Wenk* v. *City of New York, supra*, 615.)

In denying the application by the plaintiff for an injunction *pendente lite* the court stated that if the complaint were held good the cause would be set down for trial at an early date. The motion to dismiss the complaint and for judgment on the pleadings is denied, and upon the filing of a proper note of issue the clerk of this court is directed to set the case down for trial, as a preferred cause, on the trial calendar of Special Term, Part III, for the first Monday of December, 1931. This will allow time for an expeditious appeal from this decision, if the parties are so advised. Settle order.